IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| Coosa River Basin Initiative; Raymond J. Perkins, Jr.; and J. Perkins Farms, LLC, Plaintiffs, <br> v. <br> 3M Company; EIDP, Inc. f/k/a E.I. DuPont de Nemours and Company; The Chemours Company; Corteva, Inc.; DuPont de Nemours, Inc.; INV Performance Surfaces, LLC; Daikin America, Inc.; Shaw Industries, Inc.; Shaw Industries Group, Inc.; Aladdin Manufacturing Corporation; Mohawk Industries, LLC; The City of Dalton Georgia, acting through its Board of Water, Light and Sinking Fund Commissioners, d/b/a Dalton Utilities, Defendants. | Civil Action File <br> No.: 4:25-cv-00075-AT |

**MEMORANDUM OF LAW IN SUPPORT OF
SUPPLIER DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................... iii

INTRODUCTION ........................................................................... 1

FACTUAL BACKGROUND ............................................................. 3

LEGAL STANDARD...................................................................... 6

ARGUMENT .................................................................................. 7

I.      The Perkins Plaintiffs' claims are untimely................................... 7

    A.      The Perkins Plaintiffs' claims expired decades ago. ............ 7

    B.      Georgia's continuing-tort doctrine does not apply to the Perkins Plaintiffs' claims........................................................ 9

    C.      It also does not help the Perkins Plaintiffs to frame their nuisance claims as "continuing," and because the alleged nuisance is a permanent public-utility nuisance, the abatement of nuisance claim must be dismissed as well. . 10

II.     The negligence-based claims (Counts Six and Seven) fail because the Perkins Plaintiffs cannot establish that the Supplier Defendants owed them a duty...................................................... 15

    A.      The Perkins Plaintiffs' ordinary negligence claim fails for lack of duty. ........................................................................... 16

    B.      The Perkins Plaintiffs' failure-to-warn claim fails for lack of duty. ................................................................................... 19

    C.      The Restatement (Second) of Torts § 389 does not create a duty here. ............................................................................. 23

    D.      The Perkins Plaintiffs' conclusory allegations about direct discharges cannot sustain their negligence claims............ 27

III.    The Perkins Plaintiffs' nuisance claims (Counts Nine and Twelve) fail as a matter of law. .................................................................... 28

    A.      The nuisance claims fail for lack of control. ........................ 29

    B.      The Perkins Plaintiffs have not plausibly alleged a private nuisance claim................................................................... 31

IV.    Punitive damages and litigation expenses (Counts Ten and
       Eleven) are remedies, not standalone causes of action. .............. 32

CONCLUSION.................................................................................. 33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .................................................................................. 6, 27

*Atlanta Gas Light Co. v. City of Atlanta,*
    160 Ga. App. 396 (1981) ..............................................................................7

*Barnes v. St. Stephen's Missionary Baptist Church,*
    260 Ga. App. 765 (2003) ........................................................................... 30

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ......................................................................................6

*Bodin v. Gill,*
    216 Ga. 467 (1960) .................................................................................... 29

*Certainteed Corp. v. Fletcher,*
    300 Ga. 327 (2016) ..................................................................... 19, 20, 21

*City of Atlanta v. Kleber,*
    285 Ga. 413 (2009) .................................................................................... 10

*City of Coll. Park v. 2600 Camp Creek, LLC,*
    293 Ga. App. 207 (2008) ........................................................................... 32

*Coen v. Aptean, Inc.,*
    356 Ga. App. 468 (2020) ........................................................................... 32

*Cooper v. Meridian Yachts, Ltd.,*
    575 F.3d 1151 (11th Cir. 2009) ................................................................. 23

*Corp. of Mercer Univ. v. Nat'l Gypsum Co.,*
    258 Ga. 365 (1988) ................................................................................. 7, 9

*Corp. of Mercer Univ. v. Nat'l Gypsum Co.,*
    No. 85-126-3-MAC, 1986 WL 12447 (M.D. Ga. Mar. 9, 1986) ................... 29

*CSX Transp., Inc. v. Williams,*
    278 Ga. 888 (2005) ..................................................................... 17, 18, 25

*Dep't of Labor v. McConnell,*
  305 Ga. 812 (2019) .............................................................................. 15, 17

*Doe v. Samford Univ.,*
  29 F.4th 675 (11th Cir. 2022) ....................................................................6

*Dupree v. Keller Indus., Inc.,*
  199 Ga. App. 138 (1991) .............................................................................. 26

*Dutt v. Mannar & Co., LLC,*
  354 Ga. App. 565 (2020) ............................................................................. 16

*In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*
  *(Hardwick),*
  87 F.4th 315 (6th Cir. 2023) ........................................................................ 20

*Farmer v. Brannan Auto Parts, Inc.,*
  231 Ga. App. 353 (1998) .............................................................................. 21

*Franklin Credit Mgmt. Corp. v. Friedenberg,*
  275 Ga. App. 236 (Ga. Ct. App. 2005).......................................................... 32

*Gatto v. City of Statesboro,*
  312 Ga. 164 (2021) .............................................................................. 14, 30

*Gonsalvez v. Celebrity Cruises Inc.,*
  750 F.3d 1195 (11th Cir. 2013)....................................................................6

*Griffin v. Kangaroo, Inc.,*
  208 Ga. App. 190 (1993) ..............................................................................7

*Harvey v. Merchan,*
  311 Ga. 811 (2021) ......................................................................................9

*Henry v. St. Croix Alumina, LLC,*
  2007 WL 6030275 (D.V.I. Aug. 10, 2007) ................................................... 25

*Hoffman v. Atlanta Gas Light Co.,*
  206 Ga. App. 727 (1992) ..............................................................................9

*State ex rel. Hunter v. Johnson & Johnson,*
  499 P.3d 719 (Okla. 2021) .......................................................................... 31

*Johnson v. 3M,*
    563 F. Supp. 3d 1253 (N.D. Ga. 2021) ..................................................*passim*

*Johnson v. 3M Co.,*
    No. 4:20-CV-8-AT, 2024 WL 6956476 (N.D. Ga. Dec. 10, 2024)................ 13

*Julmist v. Prime Ins. Co.,*
    92 F.4th 1008 (11th Cir. 2024) .........................................................................9

*Matamoros v. Broward Sheriff's Off.,*
    2 F.4th 1329 (11th Cir. 2021) ....................................................................... 24

*Nat'l Emergency Med. Servs., Inc. v. Smith,*
    368 Ga. 18 (2023) ........................................................................................ 16

*Oglethorpe Power Corp. v. Forrister,*
    289 Ga. 331 (2011) .................................................................................*passim*

*Ogletree v. Navistar Int'l Transp. Corp.,*
    194 Ga. App. 41 (1989) ................................................................................ 26

*Omnipol, A.S. v. Multinational Def. Servs., LLC,*
    32 F.4th 1298 (11th Cir. 2022) .................................................................... 11

*Oxford Asset Mgmt., Ltd. v. Jaharis,*
    297 F.3d 1182 (11th Cir. 2002).................................................................... 11

*Parker v. Brush Wellman, Inc.,*
    377 F. Supp. 2d 1290 (N.D. Ga. 2005) ....................................................... 24

*Parker v. Scrap Metal Processors, Inc.,*
    386 F.3d 993 (11th Cir. 2004)...................................................................... 29

*Parris v. 3M Co.,*
    595 F. Supp. 3d 1288 (N.D. Ga. 2022) ........................................... 24, 25, 26

*Pincus v. Am. Traffic Sols., Inc.,*
    986 F.3d 1305 (11th Cir. 2021).......................................................................9

*Popham v. Landmark Am. Ins. Co.,*
    340 Ga. App. 603 (2017) .............................................................................. 32

*Salsbury Lab'ys, Inc. v. Merieux Lab'ys, Inc.,*
    908 F.2d 706 (11th Cir. 1990).........................................................................9

*Sheaffer v. Marriott Int'l, Inc.*,
   349 Ga. App. 338 (2019) ............................................................. 15, 16, 18, 19

*Siewe v. Fay Servicing LLC*,
   2021 WL 2651818 (N.D. Ga. Feb. 18, 2021) ................................................. 29

*Smith v. Branch*,
   226 Ga. App. 626 (1997) ..................................................................................9

*Terry v. Catherall*,
   337 Ga. App. 902 (2016) ................................................................................ 30

*Valentine Commc'ns., LLC v. Six Continents Hotels, Inc.*,
   389 F. Supp. 3d 1223 (N.D. Ga. 2019) ...........................................................6

*Wells Fargo Bank N.A. v. Cook*,
   332 Ga. App. 834 (2015) .................................................................................7

*Wheat v. Sofamor, S.N.C.*,
   46 F. Supp. 2d 1351 (N.D. Ga. 1999) ........................................................... 21

*Wise Bus. Forms, Inc. v. Forsyth Cnty.*,
   317 Ga. 636 (2023) ........................................................................................ 11

**Statutes**

OCGA § 9-3-30(a) ........................................................................................ 7, 8

OCGA § 41-1-2 ........................................................................................ 31, 32

**Other Authorities**

19 Charles Alan Wright & Arthur R. Miller, *Federal Practice &
   Procedure: The Erie Doctrine-Determining the Content of the
   Applicable State Law*, § 4507 (3d ed., Apr. 2021 update)........................... 24

Fed. R. Civ. P. 12(b)(6).....................................................................................6

Ga. Const., art. III, § 1, ¶ I...............................................................................6

Ga. Const., art. VI, § 5, ¶ III ...........................................................................6

Ga. Const. art. VI, § 6, ¶ V ..............................................................................6

Restatement (Second) of Torts § 389 ......................................... 23, 24, 25, 26

Restatement (Second) of Torts § 930, cmt. c ...................................................... 13

**INTRODUCTION**

This case concerns allegations about per- and polyfluoroalkyl substances (PFAS) in the Conasauga River and the Coosa River Basin. Plaintiffs, an environmental non-profit (the Coosa River Basin Initiative), an individual (Raymond J. Perkins, Jr.), and his landowning company (J. Perkins Farms, LLC), all allege that other Defendants—the Carpet Manufacturers[1] and the City of Dalton—violated the federal Clean Water Act by releasing PFAS into the Conasauga River. The state-law claims against the Supplier Defendants[2] under Georgia law are different: these claims, unlike the others, are asserted by just Mr. Perkins and his company (Perkins Plaintiffs). The Perkins Plaintiffs claim that the Supplier Defendants are liable for negligence and nuisance based on the downstream use and discharge of lawful products containing PFAS that they placed in the stream of commerce. The Carpet

---

[1] The Carpet Manufacturers (called "Carpet Manufacturing Defendants" in the Amended Complaint) are Shaw Industries, Inc., Shaw Industries Group, Inc., Aladdin Manufacturing Corporation, Mohawk Industries, Inc., and Mohawk Carpets, LLC.

[2] The Supplier Defendants (called "Chemical Manufacturing Defendants" in the Amended Complaint) are 3M Company ("3M"); INV Performance Surfaces, LLC ("INV" or "Invista"); Daikin America, Inc. ("Daikin"); and EIDP, Inc. f/k/a E.I. DuPont de Nemours and Company, The Chemours Company, Corteva, Inc., and DuPont de Nemours, Inc., (collectively, "DuPont"). Consistent with the Court's motion to dismiss briefing procedures (Doc. 168), Daikin and INV are filing separate, defendant-specific supplemental briefs in support of this motion to dismiss.

1

Manufacturers purchased those products, applied them to their carpets and—together with Dalton—allegedly discharged waste that contained PFAS in ways that eventually contaminated the Perkins Farms property. These claims fail.

To start, the Perkins Plaintiffs filed their complaint too late. Georgia's four-year statute of limitations bars their claims. Property claims accrue under Georgia law when the alleged wrong first occurs—and based on the face of the complaint, that occurred long ago here. The Perkins Plaintiffs' claims against the Supplier Defendants center on the manufacture and supply of products containing PFAS, which they assert began decades ago. And the harm they claim results from Dalton's Land Application System (LAS), which started operating in 1986. The claims thus accrued long ago, and no continuing tort doctrine revives them.

Even if the claims were timely, these sprawling theories of negligence and nuisance liability—that a product manufacturer could be liable for harm caused after a third party purchases and uses its product and then allegedly improperly disposes of its waste byproduct and another third party sprays the waste onto land, allowing discharges to surface waters allegedly in violation of that third party's permit—have no basis in Georgia law. Indeed, this Court correctly recognized in *Johnson v. 3M*, 563 F. Supp. 3d 1253, 1321 (N.D. Ga. 2021), that no Georgia authority "establish[es] a duty on the part of a chemical

2

supplier to protect an unknown third-party, rather than its consumer, from harm resulting from the negligent use or disposal of the chemical." That is still true, and it bars the Perkins Plaintiffs' negligence claims. And as to the nuisance claims, Georgia law requires the Perkins Plaintiffs to show that the Supplier Defendants controlled the real property from which the alleged nuisance emanated (Dalton's Land Application System). Because the Perkins Plaintiffs have made no such allegations, their nuisance claims fail too.

The Court should dismiss the claims against the Supplier Defendants.

## FACTUAL BACKGROUND

Plaintiffs allege the Carpet Manufacturers purchased products containing PFAS from the Supplier Defendants for decades and applied those products to their carpets at their manufacturing facilities in Dalton, Georgia. Am. Compl. ¶¶ 19, 46–51. The Carpet Manufacturers allegedly "ceased the use of PFAS-containing fluorochemicals in the manufacture of carpet at their Dalton area facilities by 2019." *Id.* ¶ 84.

The Carpet Manufacturers are alleged to be "sophisticated users of PFAS," *id.* ¶ 20, which had "the knowledge and expertise to understand the chemical properties of the products they use[d] in their carpet manufacturing processes, including how to dispose of them without causing harm to human health or the environment," *id.* ¶ 9. According to Plaintiffs, the Carpet manufacturers "have a sophisticated understanding of PFAS" and "have

3

dedicated ample resources towards understanding the chemistry and environmental aspects of the materials they use, including PFAS." *Id.* ¶ 119. Even so, the Carpet Manufacturers generated wastewater containing PFAS during their operations and discharged it into Dalton's wastewater-treatment system. *Id.* ¶¶ 20, 128.

Dalton's wastewater treatment system—which has been "plagued with permit violations" and "pollution problems," *id.* ¶¶ 131, 133—accepted the Carpet Manufacturers' wastewater despite Dalton's inability to remove PFAS. Dalton then pumped that wastewater—which still contained PFAS—to the "approximate[ly] 9,800 acre [Land Application System] for land application using approximately 19,000 sprayheads." *Id.* ¶ 130.   Dalton began operating its Land Application System "in or around 1986." *Id.* ¶ 131.  Plaintiffs allege that the wastewater containing PFAS was sprayed onto the Land Application System by Dalton and then "leaves [the System] via surface waters and enters the Conasauga River" and the "broader Upper Coosa River Basin." *Id.* ¶¶ 134, 137.  According to Plaintiffs, Dalton sprayed the wastewater despite its "Land Application System Permit" prohibiting wastewater discharge to surface waters, *id.* ¶ 134, allegedly violating the Clean Water Act in several ways, *id.* ¶¶ 168–208.

As for the Supplier Defendants, Plaintiffs allege that 3M and DuPont worked with the Carpet Manufacturers in Dalton starting in "the late 1980s."

4

*Id.* ¶ 6; *see also id.* ¶¶ 19, 38, 39 (alleging 3M and DuPont sold PFAS to Carpet Manufacturers "for many years").[3]  They allege Daikin manufactured and sold products containing PFAS as of "the late 1990s."  *Id.* ¶ 7; *see also id.* ¶ 43 (alleging Daikin sold PFAS to Carpet Manufacturers "for many years").  And they allege that INV's supply activities began in 2004.  *Id.* ¶ 6 n.2; *see also id.* ¶ 44 (alleging INV sold PFAS to Carpet Manufacturers "for many years").  Plaintiffs also allege that Defendants 3M, DuPont, and INV "maintained physical offices and/or laboratories in the Dalton area in order to provide technical support to their customers in the carpet industry."  *Id.* ¶ 82.  Without alleging any facts in support, Plaintiffs make the conclusory assertion that these particular Defendants "discharged PFAS to the Dalton Utilities sewer system and the LAS" from those offices and/or laboratories.  *Id.* ¶¶ 6, 82, 228.[4]

The Perkins Farms property is allegedly "subject to intermittent flooding from the Conasauga River, which results in contamination of the property's soil and surface waters" with PFAS.  *Id.* ¶ 37.  The Perkins Plaintiffs assert claims under Georgia law against the Supplier Defendants for negligence; negligent failure to warn; private nuisance; public nuisance; punitive damages;

---

[3] And the Perkins Plaintiffs allege that 3M withdrew its PFOS and PFOA products from the market in 2000. *See id.* ¶¶ 10, 60, 109. Accordingly, on the face of the Amended Complaint, the latest that 3M could have sold these products to the Carpet Manufacturers was more than two decades ago.

[4] There are no such allegations against Daikin.

expenses of litigation; and abatement of public and private nuisances. *Id.* ¶¶ 225–242, 250–289. All should be dismissed.

## LEGAL STANDARD

To avoid dismissal, a complaint must "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). And the plaintiff must "'plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Doe v. Samford Univ.*, 29 F.4th 675, 685 (11th Cir. 2022). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The court should grant the motion when "a dispositive issue of law" means a claim cannot succeed. *Valentine Commc'ns., LLC v. Six Continents Hotels, Inc.*, 389 F. Supp. 3d 1223, 1229 (N.D. Ga. 2019) (citation omitted). Georgia law is established by the Georgia Constitution, Georgia statutes, and the decisions of the Georgia Court of Appeals and Georgia Supreme Court. *See* Ga. Const. of 1983, art. III, § 1, ¶I; art. VI, § 5, ¶ III; art. VI, § 6, ¶ VI.

"A Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate 'if it is apparent from the face of the complaint that the claim is time-barred.'" *Gonsalvez v. Celebrity Cruises Inc.*, 750 F.3d 1195, 1197 (11th Cir. 2013) (citation omitted).

## ARGUMENT

### I.    The Perkins Plaintiffs' claims are untimely.

The Court should dismiss the Perkins Plaintiffs' claims because they are barred by Georgia's four-year statute of limitations for property damage claims.  *See* OCGA § 9-3-30(a).

### A.    The Perkins Plaintiffs' claims expired decades ago.

In Georgia, the limitations period begins to run as soon as "some damage *first* occurs" as a result of the defendant's allegedly tortious conduct.  *Atlanta Gas Light Co. v. City of Atlanta*, 160 Ga. App. 396, 397 (1981) (emphasis added); *see also, e.g., Wells Fargo Bank N.A. v. Cook*, 332 Ga. App. 834, 841 (2015) ("[T]he limitation period begins to run when the plaintiff first experiences any appreciable harm, even though the harm might be slight and most of the harm occurs at some later point.").  And Georgia has no "discovery rule" for torts involving property damage.  *Corp. of Mercer Univ. v. Nat'l Gypsum Co.*, 258 Ga. 365, 365 (1988).  Thus, the statute of limitations for property damage claims begins to run when the wrong is committed, regardless of when the alleged wrongdoing is discovered.  *See Griffin v. Kangaroo, Inc.*, 208 Ga. App. 190, 191 (1993) (holding that statute of limitations on claim for gasoline contamination began to run when gasoline was spilled).

The Perkins Plaintiffs' claims against the Supplier Defendants are untimely.  As to the Supplier Defendants, the "wrong" that the Perkins

7

Plaintiffs point to here is the manufacture and supply of products containing PFAS to the Carpet Manufacturers. *See* Am. Compl. ¶¶ 6, 16–17. But according to the Perkins Plaintiffs, these "wrongs" started long ago. 3M and DuPont are alleged to have worked with the Carpet Manufacturers in Dalton starting in "the late 1980s." *Id.* ¶ 6; *see also id.* ¶¶ 19, 38, 39 (alleging 3M and DuPont sold PFAS to Carpet Manufacturers "for many years"). Daikin is alleged to have manufactured and sold products containing PFAS as of "the late 1990s." *Id.* ¶ 11; *see also id.* ¶ 43 (alleging Daikin sold PFAS to Carpet Manufacturers "for many years"). INV's supply activities began in 2004. *Id.* ¶ 6 n.2; *see also id.* ¶ 44 (alleging INV sold PFAS to Carpet Manufacturers "for many years"). The Carpet Manufacturers allegedly "ceased the use of PFAS-containing fluorochemicals in the manufacture of carpet at their Dalton area facilities by 2019." *Id.* ¶ 84. And there are no allegations that any Supplier Defendant supplied or discharged any product containing PFAS after 2019. The alleged contamination that the Perkins Plaintiffs claim harmed their property likewise began long ago. At "the center" of their contamination claims "is the Riverbend Land Application System" (*Id.* ¶ 2), which "began operations in or around 1986," *id.* ¶ 131. And they claim that "the problem began even before construction of the LAS was completed in the late 1980s." *Id.* ¶ 2.

These allegations show that the Perkins Plaintiffs' claims accrued long ago. They thus should be dismissed as untimely under OCGA § 9-3-30(a).

8

### B.    Georgia's continuing-tort doctrine does not apply to the Perkins Plaintiffs' claims.

The Perkins Plaintiffs cannot invoke the continuing-tort doctrine to revive their expired claims, because Georgia's continuing-tort doctrine applies **only** "to cases in which personal injury is involved." *Mercer*, 258 Ga. at 365; *see also Harvey v. Merchan*, 311 Ga. 811, 816 (2021) ("[T]he continuing tort theory" is "limited . . . to personal injury cases.").

For this reason, *Hoffman v. Atlanta Gas Light Co.*, 206 Ga. App. 727 (1992), and *Smith v. Branch*, 226 Ga. App. 626 (1997), cases to which the Perkins Plaintiffs may point, cannot rescue their untimely negligence claims. Those cases involved continuing *nuisances*, not the continuing-tort doctrine that applies to negligence claims. That distinction matters:  For decades, the Eleventh Circuit has applied *Mercer's* categorical limitation of the continuing-tort doctrine to personal-injury cases in wide-ranging contexts. *See, e.g.*, *Salsbury Lab'ys, Inc. v. Merieux Lab'ys, Inc.*, 908 F.2d 706, 715 (11th Cir. 1990) (holding the doctrine was not available because case was "not a suit for personal injury"); *Julmist v. Prime Ins. Co.*, 92 F.4th 1008, 1020 (11th Cir. 2024) ("[T]he Georgia Supreme Court has limited any 'continuing tort theory' to personal injury claims."). And this Court is "bound by previous decisions of [the Eleventh Circuit] on" Georgia law. *Pincus v. Am. Traffic Sols., Inc.*, 986 F.3d 1305, 1310 (11th Cir. 2021).

9

The Perkins Plaintiffs' claims against the Supplier Defendants are based on property damage rather than bodily injury. *See, e.g.*, Am. Compl. ¶ 16 (alleging contamination "has injured and continue[s] to injure their property"); ¶ 37 (alleging the Perkins Farms' property has been contaminated and it "has and will continually suffer property injury and interference in the use and enjoyment of [their] property"); ¶ 233 (requesting an order requiring the removal of PFAS from the Perkins Plaintiffs' property and prevention of future contamination). Accordingly, Georgia's continuing-tort doctrine does not apply here, under binding precedent from the Georgia Supreme Court and the Eleventh Circuit.

> **C.    It also does not help the Perkins Plaintiffs to frame their nuisance claims as "continuing," and because the alleged nuisance is a permanent public-utility nuisance, the abatement of nuisance claim must be dismissed as well.**

For the nuisance claims, Georgia law "[g]enerally . . . determines the 'manner in which the statute of limitations will be applied'" by looking to "whether [the] nuisance is deemed to be continuing or permanent in nature." *Oglethorpe Power Corp. v. Forrister*, 289 Ga. 331, 333 (2011) (quoting *City of Atlanta v. Kleber*, 285 Ga. 413, 416 (2009)). The Perkins Plaintiffs have tried to frame their nuisance claims as sounding in "continuing public nuisance." Am. Compl. ¶ 16; *see also id.* ¶¶ 254, 258, 263–266, 272. But that framing, aside from being a legal conclusion that the Court need not accept, does not

10

help the Perkins Plaintiffs, because they necessarily have pleaded a "permanent nuisance" under Georgia law—which means they had "only one cause of action to recover damages" that accrued "upon the creation of the nuisance once some portion of the harm [became] observable," and they "cannot demand . . . abatement" of the alleged nuisance. *Forrister*, 289 Ga. at 333, 335; *cf. also Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1306 (11th Cir. 2022) ("[I]t is the substance of the claim and not the language used in stating it which controls." (citation omitted)); *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) ("[L]egal conclusions masquerading as facts will not prevent dismissal.").

A "continuing" (or "abatable") nuisance is one "where the harm to a plaintiff's property 'results from some minor feature of construction or management' or 'from an improper and unnecessary method of operation' [of the nuisance property], which can 'be averted at slight expense' or readily enjoined." *Wise Bus. Forms, Inc. v. Forsyth Cnty.*, 317 Ga. 636, 640–41 (2023) (quoting *Forrister*, 289 Ga. at 334). A "permanent" nuisance, by contrast, "is 'one whose character is such that, from its nature and under the circumstances of its existence, it presumably will continue indefinitely." *Id.* (quoting *Forrister*, 289 Ga. at 333). In cases where "a public utility is alleged to be causing a nuisance through a substantial and relatively enduring feature of the plan of construction or from an essential method of operation, then, by

11

definition, the nuisance is not caused by a minor feature of construction or management, so that it could be averted at slight expense." *Forrister*, 289 Ga. at 335 (internal quotation marks omitted).   For this reason, *Hoffman* and *Smith* do not help the Perkins Plaintiffs here either—neither case involved a public-utility nuisance that is, as a matter of law, permanent.  *See Forrister*, 289 Ga. at 333.[5]

Here, the Perkins Plaintiffs allege that "a public utility is . . . causing a nuisance," as *Forrister* described.  *Id.*  They allege that the LAS that is "owned and operated by the City of Dalton, Georgia, acting through its Board of Water, Light and Sinking Fund Commissioners ('Dalton Utilities')" is "the center of this [environmental] burden."  Am. Compl. ¶ 2; *id.* ¶ 51.  And they allege that the nuisance "can be abated by requiring the Carpet Manufacturing Defendants to cease their discharges of PFAS to Dalton Utilities' [publicly owned treatment works] and by requiring all Defendants to undertake and/or fund measures to remediate the LAS to cease the ongoing discharges of PFAS from the LAS to surface waters."  *Id.* ¶ 273.[6]  But, as this Court may recall (and

---

[5] As explained above, *Hoffman* and *Smith* do not control Plaintiffs' negligence claims, so whatever they say about a nuisance claim does not change the untimeliness of the Perkins Plaintiffs' negligence-based claims.  *See supra* I.B.

[6] *See also id.* ¶ 2 ("[C]hemicals discharged by the carpet industry to Dalton Utilities' publicly owned treatment works ('POTW') repeatedly run off the LAS and into the river."); *id.* ¶ 287 ("Dalton Utilities has indicated it will permit

12

the Perkins Plaintiffs' counsel know), this is not an abatement that could be undertaken "at slight expense," *Forrister*, 289 Ga. at 335, given the massive "9,800-acre LAS" with its "approximately 19,000 sprayheads," Am. Compl. ¶ 130.[7]  Accordingly, the alleged public-utility nuisance here necessarily "is considered permanent, and [the] plaintiff is allowed only one cause of action to recover damages for past and future harm." *Forrister*, 289 Ga. at 333.[8]  "The statute of limitation begins to run against such a claim upon the creation of the nuisance once some portion of the harm becomes observable."  *Id.*

The Perkins Plaintiffs thus had to file any nuisance claim within four years of "the creation of the nuisance once some portion of the harm [became] observable."  *Id.*  But they did not file suit until 2025, even though they acknowledge that it was known at least by 2016, based on "sampling of surface waters," "that Dalton Utilities discharged PFAS from the LAS to the Conasauga River or its tributaries."  Am. Compl. ¶ 152.  Indeed, the *Johnson*

---

Defendants to fund the abatement of the PFAS pollution of the LAS and the continuing discharges of PFAS to the Conasauga River.").

[7] The LAS "remediation plan, according to Plaintiff's expert" in *Johnson*, "would cost around $850 million dollars." *Johnson v. 3M Co.*, No. 4:20-CV-8-AT, 2024 WL 6956476, at *4 (N.D. Ga. Dec. 10, 2024).

[8] *See id.* at 334 ("[I]f the invasions are caused by *some substantial and relatively enduring feature of the plan of construction or from an essential method of operation,* then it will usually not be abatable by injunction and the desirability of granting the injured person complete compensation for past and future invasions is apparent." (quoting Restatement (Second) of Torts § 930, cmt. c (emphasis in original))).

case, which alleged similar nuisance claims involving PFAS in the Conasauga River coming from the Dalton LAS, was filed in 2020. Accordingly, the Perkins Plaintiffs' "one cause of action to recover damages" for nuisance, *Forrister*, 289 Ga. at 333, was filed too late. And the Perkins Plaintiffs' claim for abatement of nuisance (Count Twelve) seeks a remedy that is unavailable, so it must be dismissed. *See id.* at 335.

The same is true even if the Perkins Plaintiffs frame their theory as a nuisance based on the sale of products. No Georgia appellate court has endorsed such a theory. *See, e.g.*, *Gatto v. City of Statesboro*, 312 Ga. 164, 171 (2021) (nuisance is grounded on "dominion or control over the property giving rise to the alleged nuisance"). Even so, this Court ruled in *Johnson* that the Supplier Defendants "had a legal right to abate the nuisance . . . by refusing to sell their chemicals to manufacturers." *Johnson v. 3M*, 563 F. Supp. 3d 1253, 1344 (N.D. Ga. 2021). Here, the Perkins Plaintiffs allege that the Carpet Manufacturers "ceased the use of PFAS-containing fluorochemicals in the manufacture of carpet at their Dalton area facilities by 2019," Am. Compl. ¶ 84, and the Perkins Plaintiffs make no allegations that any Supplier Defendant

14

supplied or discharged any product containing PFAS after 2019.[9]  Thus, this theory also would be time barred.  *See supra* I.A.

* * *

 The Court should dismiss, as untimely, all the Perkins Plaintiffs' claims against the Supplier Defendants.

## II.    The negligence-based claims (Counts Six and Seven) fail because the Perkins Plaintiffs cannot establish that the Supplier Defendants owed them a duty.

But even if the claims *were* timely, the negligence-based claims fail because the Perkins Plaintiffs cannot identify a duty that the Supplier Defendants owed to them under Georgia law.

In Georgia, there can be no negligence without "a legally cognizable duty" owed by the defendant to the plaintiff, *Sheaffer v. Marriott Int'l, Inc.*, 349 Ga. App. 338, 340 (2019), and there is no "duty to all the world not to subject [others] to an unreasonable risk of harm," *Dep't of Labor v. McConnell*, 305 Ga. 812, 815 (2019).  Instead, as this Court has recognized, to "establish the requisite duty element to support a claim for negligence," a plaintiff "must point to a 'duty imposed by a valid statutory enactment of the legislature or a duty imposed by a recognized common law principle declared in the reported

---

[9] Indeed, the Perkins Plaintiffs allege that "3M withdrew [its] long-chain PFAS [products] from the market beginning in 2000."  Am. Compl. ¶ 109; *see also supra* n.3.

15

decisions of [Georgia] appellate courts.'" *Johnson*, 563 F. Supp. 3d at 1321 (quoting *Dutt v. Mannar & Co., LLC*, 354 Ga. App. 565 (2020)); *accord Sheaffer*, 349 Ga. App. at 340. A negligence claim thus fails where the plaintiff cannot identify an applicable, pre-existing legal duty. *See, e.g.*, *Nat'l Emergency Med. Servs., Inc. v. Smith*, 368 Ga. 18, 29–30 (2023) (negligence claim fails because plaintiff "did not direct [the court] to any duty founded in statute or case law applicable to the *precise situation at issue*" (emphasis added)).

The Perkins Plaintiffs do not assert that any statutory enactment creates a duty here. Instead, they allege that Georgia common law creates a duty. But they have failed to identify any such pre-existing, specific legal duty recognized by a Georgia appellate court. Accordingly, the negligence-based claims both fail for lack of duty.

## A. The Perkins Plaintiffs' ordinary negligence claim fails for lack of duty.

The Perkins Plaintiffs' ordinary negligence claim fails because, as this Court has recognized, no Georgia appellate court has imposed "a duty on the part of a chemical supplier to protect an unknown third-party, rather than its consumer, from harm resulting from the negligent use or disposal of the chemical." *Johnson*, 563 F. Supp. 3d at 1325. And any such duty would be inconsistent with settled Georgia law.

16

The Perkins Plaintiffs contend the Supplier Defendants owed all persons "who might be foreseeably harmed" (including them) a duty to "prevent injuring Plaintiff's [sic] property by the discharge of toxic PFAS chemicals into waters of the State and waters of the United States." Am. Compl. ¶ 226. But Georgia law rejects "mere foreseeability" as the standard for imposing a duty. *CSX Transp., Inc. v. Williams*, 278 Ga. 888, 890 (2005). Instead, courts applying Georgia law must "consider the larger social consequences of the notion of duty and . . . correspondingly tailor that notion so that the illegal consequences of wrongs are limited to a controllable degree." *Id.* (citation omitted).

Applying these principles, the Georgia Supreme Court in *Williams* rejected plaintiffs' arguments for a generalized duty of reasonable care to all who might foreseeably be injured. *Id.* at 890–91; *see also McConnell*, 305 Ga. at 815 (expressly disapproving notion that "everyone owes a general duty not to subject others to an unreasonable risk of harm" (internal quotation marks omitted)). And it is clear why: This theory would "create an almost infinite universe of plaintiffs." *Williams*, 278 Ga. at 890 (citation omitted).

For these reasons, this Court dismissed negligence claims against PFAS suppliers in *Johnson*. 563 F. Supp. 3d at 1324–25, 1357–58 & n.35. In that case, the Court addressed whether the suppliers—some of the same Supplier Defendants here—had a duty to "protect" non-PFAS users "who might be

17

foreseeably harmed" by the handling of products containing PFAS or their waste byproducts by third parties who *did* purchase them. *Id.* at 1320. The Court correctly found that the negligence theory failed because no Georgia authority imposes "a duty on the part of a chemical supplier to protect an unknown third-party, rather than its consumer from harm resulting from the negligent use or disposal of the chemical" (here, as alleged, the Carpet Manufacturers). *Id.* at 1325. The Court therefore dismissed those claims against the suppliers.

The Court should do the same again here. As in *Johnson*, the Perkins Plaintiffs assert that the Supplier Defendants are liable for a third party's downstream disposal of the supplier's lawful product. And today as when *Johnson* was decided, no Georgia appellate court has recognized such a duty. In the absence of Georgia appellate precedent, there is no common-law duty owed here. *See Sheaffer*, 349 Ga. App. at 340. And indeed, the Perkins Plaintiffs are exactly the kind of "unknown third" parties that would expand negligence duties to "an almost infinite universe of plaintiffs." *Williams*, 278 Ga. at 890.

Because no Georgia appellate court has recognized a duty in this context, the Court should dismiss the Perkins Plaintiffs' negligence claim against the Supplier Defendants.

18

**B.    The Perkins Plaintiffs' failure-to-warn claim fails for lack of duty.**

The Perkins Plaintiffs' negligent failure to warn claim fails for a lack of duty for two reasons—(1) no Georgia court has recognized a duty in this context, and foreseeability does not create one; and (2) the Supplier Defendants owed no duty under the learned-intermediary doctrine.

1.    *No Georgia court has recognized a duty in this context, and foreseeability does not create one*.  To start, no Georgia appellate court has found that upstream manufacturers have a duty to warn unknown, downstream third parties.  And in the absence of Georgia appellate precedent, there is no common-law duty owed here.  *See Sheaffer*, 349 Ga. App. at 340. Perhaps recognizing that lack of established duty, the Perkins Plaintiffs again rely on foreseeability.  They assert that the Supplier Defendants had a duty to warn them as "reasonably foreseeable third parties."  Am. Compl. ¶ 235.  But this contention ignores that "[t]he existence of a duty to warn, the determination of which is a legal question, is not resolved exclusively on the basis of foreseeability."  *Certainteed Corp. v. Fletcher*, 300 Ga. 327, 330 (2016) (internal citation omitted).  A manufacturer's duty to warn has been extended to reasonably foreseeable third parties in only very limited circumstances, *id.*, none of which apply here.  Indeed, requiring a warning to all who might be harmed by the Carpet Manufacturers' disposal of wastewater containing PFAS

19

and Dalton's subsequent land application and release to surface water is precisely the sort of unlimited, unfeasible warning to the world that Georgia law expressly rejects.

In *Certainteed*, a case involving take-home exposure to asbestos, the Georgia Supreme Court held that an asbestos manufacturer owed no duty to warn the daughter of an employee who worked with its asbestos-containing pipes. *Id.* The Court found that it was "unreasonable to impose a duty on [a manufacturing defendant] to warn all individuals in [plaintiff's] position, whether those individuals be family members or simply members of the public who were exposed to asbestos-laden clothing, as the mechanism and scope of such warnings would be endless" and would "create an almost infinite universe of potential plaintiffs." *Id.* at 331 (internal quotation omitted); *cf. also In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig. (Hardwick)*, 87 F.4th 315, 318 (6th Cir. 2023) ("interaction with materials containing PFAS is a fact of daily life"). Creating a duty in that case, the Court found, would "expand traditional tort concepts beyond manageable bounds." *Certainteed*, 300 Ga. at 331.

The Perkins Plaintiffs' failure-to-warn theory similarly threatens to expand failure-to-warn liability "beyond manageable bounds." The Perkins Plaintiffs are not customers of the Supplier Defendants. Instead, J. Perkins Farms, LLC, is a downstream owner of property, which, according to the Amended Complaint, has been contaminated by PFAS discharged by Carpet

20

Manufacturers into Dalton's wastewater-treatment system, and Mr. Perkins is the owner and manager of that corporation who farms and hunts on its land. To impose a duty on the Supplier Defendants under these circumstances would create an "almost infinite universe of potential plaintiffs." *Id.* at 331. The Supplier Defendants would effectively be required to warn anyone that might come into contact with their products, even years after those products were purchased, used, and disposed of by someone else. That is precisely the type of unmanageable duty to warn that Georgia law rejects.

2. ***The Supplier Defendants owed no duty under the learned intermediary doctrine***. In Georgia, "[t]he learned intermediary doctrine modifies the general rule that imposes liability against a manufacturer for the failure to warn the end user of a known risk or hazard." *Wheat v. Sofamor, S.N.C.*, 46 F. Supp. 2d 1351, 1363 (N.D. Ga. 1999). "Under the learned intermediary doctrine, a manufacturer is not required to directly warn the end user of dangers associated with a product's use." *Id.* And "[w]hile this [learned-intermediary] question is often for the jury," the Georgia Court of Appeals "has held on numerous occasions that where a product is sold to a particular group or profession, there is no duty to warn of risks generally known to that group or profession." *Farmer v. Brannan Auto Parts, Inc.*, 231 Ga. App. 353, 355 (1998).

21

The allegations in the Amended Complaint establish that the Carpet Manufacturers were learned intermediaries who knew the risks of using products that contained PFAS.  The Perkins Plaintiffs assert that the Supplier Defendants sold products to the Carpet Manufacturing Defendants, who "were sophisticated users of PFAS, familiar with their chemical properties, toxicities, and the failure of conventional sewage treatment, like that of Dalton Utilities, to remove or destroy PFAS."  Am. Compl. ¶ 20; *see also id.* ¶ 114.  They allege that the "Carpet Manufacturing Defendants have a sophisticated understanding of PFAS in their own right"—"Shaw and Mohawk are the world's largest carpet manufacturers and have dedicated ample resources towards understanding the chemistry and environmental aspects of the materials they use, including PFAS."  *Id.* ¶ 119.  They allege that Carpet Manufacturing Defendants "have dedicated laboratories and employ scientists and chemists who have the knowledge and expertise to understand the chemical properties of the products they use in their carpet manufacturing processes, including how to dispose of them without causing harm to human health or the environment."  *Id.* ¶ 9.  And they allege that the Carpet Manufacturers "even have departments purportedly dedicated to environmental responsibility who are charged with understanding the impact their products and waste have on human health and the environment."  *Id.*

22

These allegations establish that the Carpet Manufacturers were learned intermediaries that knew the risk of using products containing PFAS, and Plaintiffs are bound by what they pleaded: "The general rule is that a party is bound by the admissions in his pleadings." *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1177 (11th Cir. 2009) (citation omitted; alteration adopted). The failure-to-warn claim fails for this reason too.[10]

### C.    The Restatement (Second) of Torts § 389 does not create a duty here.

The Perkins Plaintiffs may argue that the Restatement (Second) of Torts § 389 creates a duty here.[11]  It does not, for two reasons.

---

[10] The Amended Complaint alleges that the Supplier Defendants provided warnings to the Carpet Manufacturers about how to properly dispose of PFAS, in any event.  *See, e.g.*, Am. Compl. ¶ 91 ("For instance, a Materials Safety Data Sheet ("MSDS") produced by 3M in 1986 warned that PFOA should be disposed of only through incineration or at specially designed, properly lined landfills for hazardous chemicals, not discharged into rivers and not dumped (or sprayed) onto the ground.").

[11] Section 389 says:

> One who supplies directly or through a third person a chattel for another's *use*, knowing or having reason to know that the chattel is unlikely to be made reasonably safe before being put to a *use* which the supplier should expect it to be put, is subject to liability for physical harm caused by such *use* to those whom the supplier should expect to *use* the chattel or to be endangered by its probable *use*, and *who are ignorant of the dangerous character of the chattel or whose knowledge thereof does not make them contributorily negligent*, although the supplier has informed the other for whose *use* the chattel is supplied of its dangerous character.

Restatement (Second) of Torts § 389 (1965) (emphases added).

23

*First*, no Georgia appellate court has applied Section 389 to an environmental case like this one.  That should end the inquiry: "Plaintiff must point to a duty imposed by a . . . recognized common law principle declared in the reported decisions of Georgia appellate courts."  *Johnson*, 563 F. Supp. 3d at 1325 (citation omitted; alteration adopted).  "A decision by this Court permitting Plaintiffs to proceed on such a theory would therefore be taking Georgia law in a new and controversial direction that neither that State's legislature nor [appellate courts have] indicated is appropriate.  Such is not the proper function of a federal court." *Parker v. Brush Wellman, Inc.*, 377 F. Supp. 2d 1290, 1298 (N.D. Ga. 2005); *accord Matamoros v. Broward Sheriff's Off.*, 2 F.4th 1329, 1334 (11th Cir. 2021) ("[I]t is not the function of the federal court to expand the existing scope of state law."(quoting 19 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure: The Erie Doctrine—Determining the Content of the Applicable State Law*, § 4507 (3d ed., Apr. 2021 update))).

For this reason, the Supplier Defendants respectfully disagree with the holding in *Parris v. 3M Co.*, 595 F. Supp. 3d 1288, 1336 (N.D. Ga. 2022).  Although the *Parris* court recognized that "no Georgia court has ever applied section 389 in an environmental pollution case," *id.* at 1329, and the opinion pointed to no Georgia appellate precedent applying section 389 beyond harm immediately resulting from use of a dangerous product (and there is no such

24

precedent),[12] the court still found that section 389 created a duty, relying on an unpublished federal district court decision from the Virgin Islands that applied Virgin Islands law. *Id.* at 1329–30 (citing *Henry v. St. Croix Alumina, LLC*, 2007 WL 6030275 (D.V.I. Aug. 10, 2007)). *Parris* cannot be squared with what the Georgia Supreme Court has long made clear—that in Georgia, "mere foreseeability" *cannot* establish a duty where none otherwise exists. *Williams*, 278 Ga. at 890. Because the Perkins Plaintiffs cannot "point to a duty imposed by a . . . recognized common law principle declared in the reported decisions of Georgia appellate courts" applying section 389 in an environmental case like this one, this Court should follow its prior decision and decline to find a new duty not recognized by Georgia law. *Johnson*, 563 F. Supp. 3d at 1325 (citation omitted; alteration adopted).

*Second*, section 389 by its terms does not apply to the facts alleged here because it applies to a product's *use*, not its *disuse*. The Perkins Plaintiffs assert that the Supplier Defendants are liable for harm allegedly resulting from *the disposal* of products containing PFAS by the Carpet Manufacturers. In other words, the Perkins Plaintiffs are not alleging that the Carpet Manufacturers' application of the products in their manufacturing processes

---

[12] The same is true of *every* case cited in the Restatement as a basis for adopting section 389. *See* Restatement (Second) of Torts § 389 reporter's notes (collecting cases on which section 389 was based).

(*i.e.*, "use") caused harm.  Rather, the Perkins Plaintiffs are seeking to hold the Supplier Defendants liable for harm flowing from the Carpet Manufacturers' and Dalton's *disposal practices*—the discharge of wastewater containing PFAS and the subsequent land application of that wastewater.  That distinction matters.[13]  Indeed, the only Georgia cases *Parris* cited were not environmental cases that involved a product's *disposal*, but instead were cases where the harm resulted directly from product *use.  See Ogletree v. Navistar Int'l Transp. Corp.*, 194 Ga. App. 41, 42 (1989) (third-party injured during the use of a truck); *Dupree v. Keller Indus., Inc.*, 199 Ga. App. 138, 139 (1991) (third-party injured during the use of a hydraulic punch machine); *Parris*, 595 F. Supp. 3d at 1328–29 (citing *Ogletree* and *Dupree*).  Because disposal practices do not constitute "use" of the Supplier Defendants' products, *see* Am. Compl. ¶ 53 (alleging PFAS are used to make carpets, rugs, and other textiles resistant to stains), section 389 imposes no duty on them.

---

[13] And to be clear, use and disposal are distinct concepts.  Just because the application of the products may have involved the use of water does not mean that disposal of the products is their "use."  Indeed, Plaintiffs acknowledge that 3M's Materials Safety Data sheet "warned that PFOA should be disposed of only through incineration or at specially designed, properly lined landfills for hazardous chemicals, not discharged into rivers and not dumped (or sprayed) onto the ground."  Am. Compl. ¶ 91.

26

**D.    The Perkins Plaintiffs' conclusory allegations about direct discharges cannot sustain their negligence claims.**

Recognizing that this Court has held that no duty existed when the "Supplier Defendants [were] not alleged to have discharged wastewater from manufacturing (or landfill) operations in or around Dalton, Georgia," *Johnson*, 563 F. Supp. 3d at 1324, the Perkins Plaintiffs assert in conclusory fashion that "3M, Old DuPont, and Invista . . . maintained physical offices and/or laboratories in the Dalton area," which they assert "discharged PFAS to the Dalton Utilities sewer system and the LAS," Am. Compl. ¶ 82.[14]

This allegation of direct discharge is a "'naked assertion[]' devoid of 'further factual enhancement,'" and therefore not entitled to an assumption of truth. *Iqbal*, 556 U.S. at 678 (citation omitted).  They never allege, for example, when those "physical offices and/or laboratories" operated, that any such discharge was more than *de minimis*, or that this alone could have caused their alleged harm, among other things.[15]  These vague and generalized assertions are particularly conspicuous when compared to the detailed allegations of wastewater discharge and longtime sampling that Plaintiffs assert with

---

[14] There is no such allegation against Daikin.

[15] Even so, any such discharge would have been remote, given the Perkins Plaintiffs' allegations that the Carpet Manufacturers stopped using PFAS-containing products in 2019, and there are no allegations that any Supplier Defendant supplied or discharged any product containing PFAS after 2019. *See supra* I.A.  Indeed, the allegations are that "3M withdrew . . . from the market beginning in 2000."  Am. Compl. ¶ 109; *see also supra* n.3 & n.9.

27

respect to the Carpet Manufacturers and Dalton Utilities, *e.g.*, Am. Compl. ¶¶ 8, 52, 72–74, 149–157.  For example, Plaintiffs claim that the Carpet Manufacturers "used tens of millions of pounds of PFAS and discharged billions of gallons of wastewater to Dalton Utilities."  *Id.* ¶ 8.  Yet they offer no such factual basis to support their conclusory assertion as to 3M, DuPont, and INV.  The Court should not accept it as true for purposes of deciding this motion.

* * *

The Perkins Plaintiffs fail to establish that the Supplier Defendants owed them any duty.  And where there is no duty, there can be no negligence.

## III.    The Perkins Plaintiffs' nuisance claims (Counts Nine and Twelve) fail as a matter of law.[16]

The nuisance-based claims fail as a matter of law and should be dismissed.  Regardless of whether the nuisance is public or private, the Perkins Plaintiffs have not alleged that the Supplier Defendants controlled the real property from which the alleged nuisance emanated (Dalton's Land Application System).  They instead rely on an indirect theory of control based on communications, instructions, and business decisions.  That theory, which

---

[16] The Perkins Plaintiffs list both their private nuisance claim and their public nuisance claim as separate Count(s) "Nine." For clarity, the Supplier Defendants address the two claims as if they were alleged in a singular Count Nine.  Plaintiffs separately state their "Abatement of Public and Private Nuisances" claims in Count Twelve.

28

has no basis in Georgia's property-based nuisance law, should be rejected.[17]

Moreover, a nuisance cannot simultaneously be both public and private—it must be one or the other, and the allegations in the Amended Complaint show a public nuisance rather than a private one.  So, at a minimum, the Court should dismiss the private nuisance claim.[18]

### A.    The nuisance claims fail for lack of control.

Regardless of whether the nuisance alleged is private or public, the Perkins Plaintiffs' nuisance claims fail because the Supplier Defendants cannot be held liable for a nuisance that is emanating from property they do not control.[19]  Georgia nuisance law concerns actions or conditions occurring

---

[17]  It also is unclear how Mr. Perkins himself can assert a cognizable injury based on the property owned by the LLC.  *See, e.g.*, *Siewe v. Fay Servicing LLC*, 2021 WL 2651818, at \*6 (N.D. Ga. Feb. 18, 2021) (owners "considered separate from the company"); *Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1017–18 (11th Cir. 2004) (plaintiff's ownership of property necessary for nuisance claims).

[18] As discussed *supra* I.C., the abatement-of-nuisance claim (Count Twelve) should be dismissed because abatement is not an available remedy for the alleged permanent public-utility nuisance alleged here.

[19] Plaintiffs also must show that the Supplier Defendants had control over the instrumentality that allegedly caused the nuisance (wastewater containing PFAS). *Bodin v. Gill*, 216 Ga. 467, 473 (1960); *Corp. of Mercer Univ. v. Nat'l Gypsum Co.*, No. 85-126-3-MAC, 1986 WL 12447, at \*6 (M.D. Ga. Mar. 9, 1986). The Supplier Defendants did not have control over their products containing PFAS after they sold those products, much less over waste generated by the use of those products.  Plaintiffs thus cannot make that showing.  The Supplier Defendants recognize that the Court previously rejected the argument that there "can be no claim for nuisance against manufacturers whose products allegedly caused harm after they left the manufacturers' control." *Johnson*, 563 F. Supp. 3d at 1342.   But *Johnson* did not address the separate

29

on a particular piece of real property—"the whole idea of nuisance is that of either a continuous or regularly repeated act or condition on [a] property, which caused [the] injury." *Barnes v. St. Stephen's Missionary Baptist Church*, 260 Ga. App. 765, 769 (2003); *accord Gatto*, 312 Ga. at 171 (nuisance is grounded on "dominion or control over the property giving rise to the alleged nuisance"). Thus, while "ownership of land by the tortfeasor is not an element . . . control [of land] is." *Terry v. Catherall*, 337 Ga. App. 902, 905 (2016).

The Perkins Plaintiffs identify the source of the nuisance as "discharges and releases of Defendants' PFAS into the Conasauga River from the [Dalton Land Application System]." *See, e.g.*, Am. Compl. ¶¶ 258, 272. But the Perkins Plaintiffs do not allege that the Supplier Defendants ever owned or otherwise controlled the LAS, or Dalton's water-treatment facility before that, or the Carpet Manufacturers' facilities before that. Instead, the Perkins Plaintiffs allege that the Supplier Defendants "controlled, created, caused or contributed to" the "nuisance by improperly directing and/or instructing the [Carpet Manufacturers] as to disposal requirements." *Id.* ¶¶ 254, 264.

This novel theory of control, which would impose liability based on product sales, instruction manuals, and customer communications, is inconsistent with Georgia's property-based nuisance law, and it has *never* been

---

requirement for control over the nuisance property that is the focus of this motion.

recognized by a Georgia appellate court. A nuisance plaintiff must show that the defendant had control of the property from which the putative nuisance emanated. Based on their allegations, the Perkins Plaintiffs cannot make that showing here. The Supplier Defendants have no control over the property from which the alleged nuisance emanates, or the properties on which the purchasers generated byproduct from their handling and disposal of the products, or the intervening properties through which that waste traveled to the LAS. To hold that the Supplier Defendants can be nonetheless liable in nuisance would be unsupported by any Georgia nuisance precedent, would inappropriately subsume products liability into nuisance law, and would buck the "clear national trend to limit public nuisance to land or property use" and "refuse[] to allow products-based public nuisance claims." *State ex rel. Hunter v. Johnson & Johnson*, 499 P.3d 719, 730 (Okla. 2021) (citing cases). The Perkins Plaintiffs' nuisance claims should be dismissed for lack of control.

## B. The Perkins Plaintiffs have not plausibly alleged a private nuisance claim.

The Perkins Plaintiffs have not plausibly alleged a private nuisance claim, so at a minimum, the Court should dismiss the private nuisance claim.

By statute, "[n]uisances are either public or private." OCGA § 41-1-2. "A private nuisance is one limited in its injurious effects to one or a few individuals." *Id.* "A public nuisance," on the other hand, "is one which

31

damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals." *Id.* "In addition, a public nuisance requires some act or omission which obstructs or causes inconvenience to the public in exercise of rights common to all." *City of Coll. Park v. 2600 Camp Creek, LLC*, 293 Ga. App. 207, 209 (2008) (internal quotation marks and citation omitted).

Here, the Perkins Plaintiffs' allegations that "the Conasauga River and the Upper Coosa River Basin" are contaminated are not "limited in [their] injurious effect to one or a few individuals," as required for a private nuisance. *See* Am. Compl. ¶¶ 252, 259, 262; *see also* OCGA § 41-1-2. Accordingly, the Court should dismiss the private nuisance claim.

## IV. Punitive damages and litigation expenses (Counts Ten and Eleven) are remedies, not standalone causes of action.

While the Perkins Plaintiffs plead separate "claims" against the Supplier Defendants for punitive damages and litigation expenses, these are remedies, not independent causes of action. *See, e.g.*, *Coen v. Aptean, Inc.*, 356 Ga. App. 468, 471 (2020) (punitive damages not a cause of action); *Franklin Credit Mgmt. Corp. v. Friedenberg*, 275 Ga. App. 236, 242 (Ga. Ct. App. 2005) (same for litigation expenses). And because the Perkins Plaintiffs' substantive claims fail, their derivative claims for punitive damages and litigation expenses fail as well. *See Popham v. Landmark Am. Ins. Co.*, 340 Ga. App. 603, 612 (2017).

32

The Court should thus dismiss these "claims."

## CONCLUSION

For the reasons above, the Court should dismiss the Perkins Plaintiffs'

claims against the Supplier Defendants (Counts Six, Seven, Nine, Ten, Eleven,

and Twelve).


Date: June 17, 2026          Respectfully submitted,


                             */s/ Robert B. Remar*
                             Robert B. Remar
                             GA Bar No. 600575
                             Amanda M. Cheek
                             GA Bar No. 729443
                             Smith, Gambrell & Russell, LLP
                             1105 W. Peachtree St. NE, Suite 1000
                             Atlanta, GA 30309
                             rremar@sgrlaw.com
                             acheek@sgrlaw.com

                             Jackson R. Sharman, III
                             GA Bar No. 637930
                             M. Christian King *(admitted pro hac vice)*
                             W. Larkin Radney, IV *(admitted pro hac vice)*
                             Tatum Jackson *(admitted pro hac vice)*
                             Cassidy R. Keith *(admitted pro hac vice)*
                             Lightfoot, Franklin and White LLC
                             The Clark Building 400
                             20th Street North
                             Birmingham, AL 35203
                             Phone: (205) 581-0700
                             jsharman@lightfootlaw.com
                             cking@lightfootlaw.com
                             lradney@lightfootlaw.com
                             tjackson@lightfootlaw.com

ckeith@lightfootlaw.com

*Attorneys for 3M Company*

/s/ *David E. Nahmias*
David E. Nahmias (GA Bar 534106)
Jeffrey A. Kaplan, Jr. (GA Bar 859280)
JONES DAY
1221 Peachtree Street NE, Suite 400
Atlanta, GA 30361
Tel: (404) 581-8502
Email: dnahmias@jonesday.com
Email: jkaplan@jonesday.com

James L. Hollis (GA Bar 930998)
Caroline W. Suydam (GA Bar 312378)
BALCH & BINGHAM, LLP
30 Ivan Allen Jr. Blvd. N.W., Suite 700
Atlanta, Georgia 30309
Tel: (404) 261-6020
Email: jhollis@balch.com
Email: csuydam@balch.com

*Attorneys for Daikin America, Inc.*

/s/ *Alexandra B. Cunningham*
Alexandra B. Cunningham (GA Bar No. 096280)
Merideth S. Daly (*admitted pro hac vice*)
Hunton Andrews Kurth LLP
951 E. Byrd Street
Riverfront Plaza, East Tower
Richmond, VA 23219
Tel: (804) 787-8087
Tel: (804) 788-8645
Fax: (804) 343-4612
acunningham@hunton.com
mdaly@hunton.com

Laura T. Wagner (GA Bar No. 674911)
Hunton Andrews Kurth LLP
Bank of America Plaza, Suite 4100

34

600 Peachtree Street, N.E.
Atlanta, GA 30308-2216
Telephone: (404) 888-4117
Facsimile: (404) 602-9016
lwagner@hunton.com

*Attorneys for Defendant INV Performance Surfaces, LLC*

/s/ Nia S. Wilson Hall
Nia S. Wilson Hall (GA Bar No. 914011)
SHOOK, HARDY & BACON L.L.P.
nwilson@shb.com
1230 Peachtree Street, Suite 1200
Atlanta, GA 30309
Telephone: 470-867-6000
Facsimile: 470-867-6001

Andrew Carpenter (*admitted pro hac vice*)
acarpenter@shb.com
Brent Dwerlkotte (*admitted pro hac vice*)
dbdwerlkotte@shb.com
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: 816-474-6550
Facsimile: 816-421-5547

*Attorneys for Defendants EIDP, Inc.*
*f/k/a E.I. du Pont de Nemours and Company;*
*The Chemours Company; Corteva, Inc.; and*
*DuPont de Nemours, Inc.*

35

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| Coosa River Basin Initiative; Raymond J. Perkins, Jr.; and J. Perkins Farms, LLC, Plaintiffs, v. 3M Company; EIDP, Inc. f/k/a E.I. DuPont de Nemours and Company; The Chemours Company; Corteva, Inc.; DuPont de Nemours, Inc.; INV Performance Surfaces, LLC; Daikin America, Inc.; Shaw Industries, Inc.; Shaw Industries Group, Inc.; Aladdin Manufacturing Corporation; Mohawk Industries, LLC; The City of Dalton Georgia, acting through its Board of Water, Light and Sinking Fund Commissioners, d/b/a Dalton Utilities, Defendants. | Civil Action File No.: 4:25-cv-00075-AT |

**CERTIFICATE OF SERVICE**
**COMPLIANCE WITH LOCAL RULE 5.1**

I hereby certify that I have this date electronically filed the within and foregoing, which has been prepared using 13-point Century Schoolbook font, with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to all attorneys of records.


Dated: June 17, 2026                    */s/ Robert B. Remar*

                                        One of the Attorneys for 3M Company


36