UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| Coosa River Basin Initiative; Raymond J. Perkins, Jr., and J. Perkins Farms, LLC,<br><br>        Plaintiffs,<br><br>v.<br><br>3M Company; EIDP, Inc. f/k/a E.I. DuPont de Nemours and Company; The Chemours Company; Corteva, Inc.; DuPont de Nemours, Inc.; INV Performance Surfaces, LLC; Daikin America, Inc.; Shaw Industries, Inc.; Shaw Industries Group, Inc.; Aladdin Manufacturing Corporation; Mohawk Industries, Inc.; Mohawk Industries, LLC; The City of Dalton, Georgia, acting through its Board of Water, Light and Sinking Fund Commissioners d/b/a Dalton Utilities,<br><br>        Defendants. | Civil Action No. 4:25-cv-00075-AT |

**BRIEF IN SUPPORT OF DEFENDANT THE CITY OF DALTON, GEORGIA, ACTING THROUGH ITS BOARD OF WATER, LIGHT, AND SINKING FUND COMMISSIONERS, D/B/A DALTON UTILITIES' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ...............................................................................................1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ...........................2
    I.     Background .............................................................................2
    II.    Plaintiffs' Claims.....................................................................4
    III.   Plaintiffs' Alleged Injuries ......................................................5

STANDARD OF REVIEW .................................................................................6

ARGUMENT AND CITATION TO AUTHORITY ...........................................7
    I.     Plaintiffs Fail to Plausibly Allege Unpermitted Discharges from the LAS in Violation of the CWA (Count One) ...................................7
    II.    Plaintiffs Fail to Allege Discharges of Non-Stormwater Containing PFAS in Violation of the CWA (Count Two).................11
    III.   The LAS Permit and Georgia Water Quality Control Act Are Not Enforceable Through a CWA Citizen Suit (Counts Three and Four) ...................................................................13
         A.    Plaintiffs Cannot Enforce the LAS Permit Through a CWA Citizen Suit ...........................................13
         B.    The Georgia Water Quality Control Act Similarly Confers No Private Right of Action ...........................16
    IV.   The Court Should Dismiss the Perkins' Negligent Misconduct, Negligence *Per Se,* and Nuisance Claims for Damages Against Dalton Utilities (Counts Six, Eight, and Nine) ...................................17
         A.    The Negligence Claims Fail on Municipal Immunity Grounds................................................................17
         B.    The *Ante Litem* Notice Is Insufficient.........................18
    V.    The Court Should Dismiss the Perkins' Abatement of Public and Private Nuisances Claim (Count Twelve)................................20
         A.    The Perkins Lack Standing to Pursue Abatement of the LAS, Conasauga River, and its Tributaries ...............20
         B.    The Perkins Have an Adequate Remedy at Law ...........21
         C.    The Overbroad Abatement Relief Is Unsupported by Georgia Law..................................................23
         D.    Dalton Utilities Has Taken Steps to Remediate the LAS ........24

CONCLUSION..................................................................................................25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adhanom v. Blinken*,
2025 WL 3223029 (N.D. Ga. Mar. 6, 2025) ........................................................6

*Allgood Rd. United Methodist Church, Inc. v. Smith*,
325 S.E.2d 392 (Ga. Ct. App. 1984)..................................................................23

*Askins v. Ohio Dep't of Agric.*,
809 F.3d 868 (6th Cir. 2016) ............................................................................15

*Atl. States Legal Found., Inc. v. Eastman Kodak Co.*,
12 F.3d 353 (2d Cir. 1993) ...............................................................................15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................................6

*Best Jewelry Mfg. Co. v. Reed Elsevier Inc.*,
780 S.E.2d 689 (Ga. Ct. App. 2015)..................................................................15

*Bruce v. Wallis*,
556 S.E.2d 124 (2001) ..................................................................................23, 25

*Cent. of Ga. Ry. Co. v. Americus Const. Co.*,
65 S.E.2d 855 (Ga. 1909) .................................................................................22

*City & Cnty. of San Francisco v. EPA*,
604 U.S. 334 (2025)..........................................................................................13

*City of Alpharetta v. Francis*,
883 S.E.2d 400 (Ga. Ct. App. 2023)..................................................................23

*City of Alpharetta v. Vlass*,
861 S.E.2d 249 (Ga. Ct. App. 2021)..................................................................18

*City of Atlanta v. Mitcham*,
769 S.E.2d 320 (Ga. 2015) ...............................................................................18

*City of Atlanta v. MLK Props., LLC*,
904 S.E.2d 79 (Ga. Ct. App. 2024)....................................................................19

*City of Douglas v. Cartrett*,
 137 S.E.2d 358 (Ga. Ct. App. 1964)..................................................................18

*City of Guyton v. Barrow*,
 828 S.E.2d 366 (Ga. 2019) ......................................................................10, 16

*City of Harrisonville v. W. S. Dickey Clay Mfg. Co.*,
 289 U.S. 334 (1933).........................................................................................24

*City of Powder Springs v. WMM Props., Inc.*,
 325 S.E.2d 155 (Ga. 1985) ..............................................................................18

*City of Warner Robins v. Holt*,
 470 S.E.2d 238 (1996) ......................................................................................22

*Conservation Law Found. v. Town of Barnstable*,
 615 F. Supp. 3d 14 (D. Mass. 2022)....................................................................8

*Coosa River Basin Initiative v. EPD*,
 BNR-ES-0713085-57, 2007 Ga. ENV LEXIS 6 (2007) ...................................16

*Coosa River Basin Initiative v. EPD*,
 BNR-WQC-1210625-105, 2012 Ga. ENV LEXIS 3 (2012).............................16

*County of Maui v. Haw. Wildlife Fund*,
 590 U.S. 165 (2020)..................................................................................passim

*Cundy v. City of Smyrna*,
 591 S.E.2d 447 (2003) ......................................................................................19

*Dep't of Transp. v. Mixon*,
 864 S.E.2d 67 (Ga. 2021) .................................................................................22

*Foster Poultry Farms, Inc. v. Water Works & Sewer Bd. of the City of Demopolis*,
 370 F. Supp. 3d 1341 (S.D. Ala. 2019) ............................................................25

*Franklin Cnty. v. Fieldale Farms Corp.*,
 507 S.E.2d 460 (Ga. 1998) ..............................................................................16

*Friends of Everglades v. S. Fla. Water Mgmt. Dist.*,
 570 F.3d 1210 (11th Cir. 2009) .......................................................................14

iii

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) .................................................................................24

*Garfield v. NDC Health Corp.*,
    466 F.3d 1255 (11th Cir. 2006) ...........................................................10

*Gatto v. City of Statesboro*,
    860 S.E.2d 713 (Ga. 2021) ...................................................................18

*Georgia Republican Party v. Sec. & Exch. Comm'n*,
    888 F.3d 1198 (11th Cir. 2018) ...........................................................17

*Glynn Env't Coal., Inc. v. Sea Island Acquisition, LLC*,
    146 F.4th 1080 (11th Cir. 2025) ......................................................7, 12

*Govea v. City of Norcross*,
    608 S.E.2d 677 (Ga. Ct. App. 2004) ...................................................15

*Hammond v. City of Warner Robins*,
    482 S.E.2d 422 (Ga. Ct. App. 1997) ...................................................22

*Hodges v. Pine Prod. Co.*,
    68 S.E. 1107 (Ga. 1910) .......................................................................22

*Ingram v. City of Acworth*,
    84 S.E.2d 99 (Ga. Ct. App. 1954) ........................................................18

*Johnson v. 3M Co.*,
    2024 WL 6956476 (N.D. Ga. Dec. 10, 2024) .................................20, 21, 22, 24

*Johnson v. City of Atlanta*,
    107 F.4th 1292 (11th Cir. 2024) ...........................................2, 6, 22

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)...............................................................................20

*McElmurray v. Consol. Gov't of Augusta–Richmond Cnty.*,
    501 F.3d 1244 (11th Cir. 2007) .............................................................6

*Neel v. Clark*,
    145 S.E.2d 235 (Ga. 1965) ...................................................................22

iv

*Pac. Coast Fed'n of Fishermen's Ass'ns v. Conant*,
   657 F. Supp. 3d 1341 (E.D. Cal. 2023) .................................................................9

*Parker v. Scrap Metal Processors, Inc.*,
   386 F.3d 993 (11th Cir. 2004) .............................................................................7

*Price v. Ga. Indus. Realty Co.*,
   207 S.E.2d 556 (Ga. Ct. App. 1974)...................................................................22

*RMS Titanic, Inc. v. Zaller*,
   978 F. Supp. 2d 1275 (N.D. Ga. 2013)................................................................10

*Ruff v. Phillips*,
   50 Ga. 130 (1873) ...............................................................................................23

*Sierra Club v. Va. Elec. & Power Co.*,
   903 F.3d 403 (4th Cir. 2018) ..............................................................................10

*Siewe v. Fay Servicing, LLC*,
   2021 WL 2651819 (N.D. Ga. Feb. 18, 2021) ......................................................21

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998)...............................................................................................21

*The City of Dalton v. 3M Co., et al.*,
   No. 4:24-cv-293-WMR (N.D. Ga. Apr. 1, 2025) ....................................4, 24, 25

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021)..............................................................................................20

*Vaillant v. City of Atlanta*,
   599 S.E.2d 261 (Ga. Ct. App. 2004)....................................................................19

*Wallace v. City of Atlanta*,
   889 S.E.2d 438 (Ga. Ct. App. 2023)....................................................................19

## Statutes and Rules

33 U.S.C. § 1362(14) ...................................................................................................7

33 U.S.C § 1365..................................................................................................14, 15

42 U.S.C. § 9601, *et seq*.........................................................................................3, 4

v

O.C.G.A. § 9-5-1.................................................................................................22

O.C.G.A. § 12-2-2(c)(2)(A)................................................................................16

O.C.G.A. § 12-5-30(a–b) ....................................................................................11

O.C.G.A. § 12-5-48.............................................................................................15

O.C.G.A. § 12-5-51.............................................................................................16

O.C.G.A. § 23-1-4...............................................................................................21

O.C.G.A. § 36-33-1.............................................................................................18

O.C.G.A. § 36-33-5...............................................................................................5

O.C.G.A. § 36-33-5(a) ..........................................................................................6

O.C.G.A. § 36-33-5(b).........................................................................................19

O.C.G.A. § 51-9-1...............................................................................................20

Clean Water Act............................................................................................*passim*

Georgia Water Quality Control Act...............................................................*passim*

**Other Authorities**

Ga. Comp. R. & Regs. 391-3-6-.19 ....................................................................15

Ga. Comp. R. & Regs. 391-3-6-.11(3)................................................................11

## INTRODUCTION

Plaintiffs assert ten counts against Defendant The City of Dalton, Georgia, acting through its Board of Water, Light, and Sinking Fund Commissioners, d/b/a Dalton Utilities ("Dalton Utilities"); each fails as a matter of law.

Plaintiffs assert four Clean Water Act ("CWA") claims against Dalton Utilities. The first requires a finding that the land application system ("LAS") operates as the functional equivalent of a direct discharge from a point source. Plaintiffs do not allege any facts to support that finding, and their own allegations belie that theory. Moreover, the LAS is a nonpoint source—a fact confirmed by the Georgia Environmental Protection Division ("EPD")—rendering it incompatible with National Pollutant Discharge Elimination System ("NPDES") permitting requirements. The second CWA claim requires a finding that Dalton Utilities is violating the General Stormwater Permit, and Plaintiffs allege no facts to support that claim. Finally, in their third and fourth CWA claims, Plaintiffs attempt to enforce the state-issued LAS Permit and the Georgia Water Quality Control Act ("GWQCA") through a CWA citizen suit; that fails because the CWA limits citizen suits to NPDES permit violations, the LAS permit is not an NPDES permit, and there is no a private right of action to enforce a LAS Permit.

Plaintiffs' claims under state law fare no better. The negligence claims are barred by Dalton Utilities' sovereign immunity, and all damages claims

1

independently fail because Plaintiffs' *ante litem* notice is fatally deficient. The nuisance and abatement claims seek sweeping injunctive relief—remediation of an entire river and Dalton Utilities' own property—for an injury that is fully redressable by monetary damages. The First Amended Complaint ("FAC") against Dalton Utilities should be dismissed in its entirety.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

## I.    Background

Dalton Utilities is a municipal utility that operates a publicly owned treatment works ("POTW") that collects and treats wastewater from households and businesses in and around Dalton, Georgia. FAC, ECF No. 167 ¶ 51. The POTW includes two wastewater treatment plants that receive and treat incoming wastewater before it is land-applied at a 9,800-acre LAS for further treatment. *Id.* The operation of Dalton Utilities' LAS is governed by the terms and conditions of two permits: the Land Application System Permit No. GAJ020056 ("LAS Permit"), *id.* ¶ 134, and the NPDES Industrial General Stormwater Permit GAR050000 (the "NPDES General Stormwater Permit"), *id.* ¶ 185, both of which were issued by EPD.[1]

For decades, the other Defendants in this action profited from designing,

---

[1] True and correct copies of the LAS Permit and NPDES General Stormwater Permit are attached as **Exhibit A** and **Exhibit B**, respectively. The Court can consider the permits under the incorporation by reference doctrine because they are "(1) central to the plaintiff's claims; and (2) undisputed, meaning that [their] authenticity is not challenged." *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024).

manufacturing, and selling PFAS and PFAS-containing products, which ended up in Dalton Utilities' POTW.  The Chemical Manufacturing Defendants[2] sold PFAS and PFAS-containing products to manufacturers in and around Dalton, Georgia, including the Carpet Manufacturing Defendants,[3] which applied the chemicals to their carpet and textile products to achieve stain and water resistance.  *Id.* ¶ 19.  That manufacturing process generated PFAS-laden industrial wastewater that was sent to Dalton Utilities' POTW and land-applied to the LAS, even though Defendants knew that neither the POTW nor the LAS is designed to treat PFAS.  *Id.* ¶ 21.

In 2024, the U.S. Environmental Protection Agency ("EPA") finalized new regulations that classify two PFAS compounds (PFOA and PFOS) as hazardous substances under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601, *et seq*. ("CERCLA"), and established, for the first time, enforceable Maximum Contaminant Levels ("MCLs") for several PFAS compounds, including PFOA and PFOS.  *Id.* ¶¶ 67–68.  As a result of these new regulations, for the first time, Dalton Utilities is obligated, and has already taken

---

[2] The Chemical Manufacturing Defendants are 3M Company ("3M"); INV Performance Surfaces, LLC ("Invista"); Daikin America, Inc. ("Daikin"); EIDP, Inc., The Chemours Company, Corteva, Inc., and DuPont de Nemours, Inc. (collectively, "DuPont").  FAC ¶ 17.

[3] The Carpet Manufacturing Defendants are Aladdin Manufacturing Corporation, Inc., Mohawk Industries, Inc., and Mohawk Carpets LLC (collectively, "Mohawk"), and Shaw Industries Group, Inc. and Shaw Industries, Inc. (collectively, "Shaw").  *Id.* ¶ 18.

steps, to remediate PFAS contamination at the POTW.  *See id.* ¶ 287.  On December 9, 2024, Dalton Utilities filed an action in this Court against substantially the same Chemical and Carpet Manufacturing Defendants, seeking to recover, *inter alia*, CERCLA response costs, "including such costs incurred to remediate Defendants' PFAS contamination and otherwise remove, contain, or address Defendants' PFAS from wastewater and, more generally, from the POTW."  *See* ECF No. 60-2 at 59–60; First Am. Compl., *The City of Dalton v. 3M Co., et al.,* No. 4:24-cv-293-WMR (N.D. Ga. Apr. 1, 2025), Dkt. No. 85 [hereinafter *The City of Dalton*].

This action has two sets of Plaintiffs: (1) the Coosa River Basin Initiative ("CRBI"), a nonprofit organization focusing on environmental matters affecting the Coosa River Basin; and (2) Raymond J. Perkins, Jr. and J. Perkins Farms, LLC (together, the "Perkins").  FAC ¶¶ 32, 16.  Mr. Perkins is the owner of J. Perkins Farms, LLC, which, in turn, is the owner of approximately 119 acres of real property next to the Conasauga River.  *Id.* ¶¶ 36–37.

## II.    <u>Plaintiffs' Claims</u>

The FAC alleges ten counts against Dalton Utilities.  Counts One through Four assert statutory claims for purported violations of the CWA and the GWQCA. FAC ¶¶ 168–208.  Next, the Perkins Plaintiffs assert five state-law claims: (1) negligent misconduct (Count Six), *id.* ¶¶ 225–33; (2) negligence *per se* (Count Eight), *id.* ¶¶ 243–249; (3) private nuisance (Count Nine), *id.* ¶¶ 250–260; (4) public

nuisance (Count Nine [sic]), *id.* ¶¶ 261–74; and (5) abatement of public and private nuisances (Count Twelve), *id.* ¶¶ 284–89.  Finally, Plaintiffs assert a derivative claim for expenses of litigation (Count Eleven).  *Id.* ¶¶ 281–83.

## III.  Plaintiffs' Alleged Injuries

CRBI alleges, in conclusory fashion, that its members have suffered economic, recreational, and aesthetic injuries due to Defendants' purported CWA violations.  FAC ¶ 33.  They allege no facts, however, describing any such injuries.

The Perkins' sole alleged harm is to their property.  *See id.* ¶¶ 226, 230, 233, 248–49, 256, 260, 270, 276.  In connection with their negligence and nuisance claims, the Perkins seek an order broadly requiring Defendants (1) to remove their chemicals and toxins from the *entire* Conasauga River *and* related surface waters in the Upper Coosa River Basin, *id.* ¶¶ 286, 288; (2) to "undertake and/or fund measures to remediate the LAS," *id.* ¶¶ 273, 288; *and* (3) to "take all steps necessary to remove their chemicals from … Plaintiff's property," *id.* ¶ 288.  These remedies are equitable in nature, but at various points in the FAC, the Perkins also seek damages in the form of "costs of remediating the Perkins property and/or the costs for remediating the LAS."  *Id.* ¶¶ 232, 241, 248, 260, 274.  However, Plaintiffs appear to minimize their monetary damages—they are not included in the Prayer of Relief, and Plaintiffs failed to attach to the FAC the statutory *ante litem* notice the Perkins sent to Dalton Utilities on February 14, 2025, pursuant to O.C.G.A. § 36-33-5 (the

"*Ante Litem* Notice"), wherein the Perkins estimated the costs associated with the remediation of their property injury at $50,000,000. Ex. C at 4.[4]

The Perkins claim that "intermittent flooding from the Conasauga River" is the cause of the "contamination of the property's soil and surface waters" with PFAS, FAC ¶ 37; however, the FAC does not allege the occurrence of *any* flooding events. The same is true for the *Ante Litem* Notice, which mentions no flooding events, let alone any in the six months prior to sending the Notice. *See* Ex. C.

### STANDARD OF REVIEW

Federal Rule of Civil Procedure ("Rule") 12(b)(1) challenges a court's subject-matter jurisdiction. *McElmurray v. Consol. Gov't of Augusta–Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). "A facial attack 'challenges whether a plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for purposes of the motion.'" *Adhanom v. Blinken*, 2025 WL 3223029, at *1 (N.D. Ga. Mar. 6, 2025) (citation omitted).

Under Rule 12(b)(6), the Court should dismiss the FAC unless the "allegations [are] enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

---

[4] A true and correct copy of the *Ante Litem* Notice is attached as **Exhibit C**. The Court can consider the *Ante Litem* Notice under the incorporation by reference doctrine. *Johnson*, 107 F.4th at 1300. The *Ante Litem* Notice is central because, without it, the Perkins could not seek damages. *See* O.C.G.A. § 36-33-5(a).

## ARGUMENT AND CITATION TO AUTHORITY

I.    **Plaintiffs Fail to Plausibly Allege Unpermitted Discharges from the LAS in Violation of the CWA (Count One)**

Plaintiffs fail to plausibly allege that Dalton Utilities is violating the CWA as a result of unpermitted discharges, either as a direct discharge or the "functional equivalent of a direct discharge," as required to state a claim under the CWA. *County of Maui v. Haw. Wildlife Fund*, 590 U.S. 165, 183 (2020).

"To establish a [CWA] violation, the plaintiffs must prove that (1) there has been a discharge; (2) of a pollutant; (3) into waters of the United States; (4) from a point source; (5) without a . . . permit." *Glynn Env't Coal., Inc. v. Sea Island Acquisition, LLC*, 146 F.4th 1080, 1088 (11th Cir. 2025) (quoting *Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1008 (11th Cir. 2004)).  A point source is a "discernible, confined and discrete conveyance . . . from which pollutants are or may be discharged." 33 U.S.C. § 1362(14).  Thus, "a pipe that spews pollution directly into coastal waters" easily fits the definition of a discharge from a point source to waters of the United States. *County of Maui*, 590 U.S. at 178.  By contrast, where pollutants "originate from a point source but are conveyed to navigable waters by a nonpoint source," such as groundwater, an NPDES permit may be required only if there is the "functional equivalent of a direct discharge." *Id.* at 170 (quotation omitted).  To determine whether a discharge is functionally equivalent to a direct discharge, courts consider many factors, with "[t]ime and distance" being the "most important

7

factors." *Id.* at 185.

In Count One, Plaintiffs principally allege that PFAS moving through groundwater beneath the LAS constitutes the "functional equivalent" of a direct discharge. FAC ¶ 173. While Plaintiffs use the label "functional equivalent," *id.* ¶¶ 155, 173, they fail to allege facts establishing any of the factors used to assess functional equivalence, including, crucially, the time and distance that PFAS travels before reaching the Conasauga River. *See County of Maui*, 590 U.S. at 184–85. In fact, the few allegations that touch on the "time" factor point in the opposite direction. Although Plaintiffs claim that PFAS-contaminated effluent "flows rapidly" through groundwater, FAC ¶ 155, they concede that it takes "decades and longer after [the] initial deposit" for PFAS to be discharged from the LAS to the Conasauga River. *Id.* ¶ 136.

Courts have dismissed complaints that similarly alleged discharges that take decades to reach a water of the United States. For example, in *Conservation Law Found. v. Town of Barnstable*, 615 F. Supp. 3d 14 (D. Mass. 2022), a district court held that similar allegations failed to state a claim. There, Plaintiffs alleged that nitrogen-contaminated effluent "travels rapidly" through groundwater at a rate of one foot per day, "with little to no change in the nitrogen concentration" by the time it reaches waters of the United States 1.5 miles away. *Id.* at 26. The court dismissed the case because that rate of travel meant that it took 21 years for the nitrogen to travel from the wastewater treatment facility to navigable waters. *See id.* at 23.

Separately, Plaintiffs also appear to assert a direct discharge theory, *see* FAC ¶¶ 172, 154; yet Plaintiffs do not plead any facts that would establish a direct discharge of pollutants from a point source to a water of the United States. A direct discharge would be a conveyance such as "a pipe that spews pollution directly into coastal waters." *County of Maui*, 590 U.S. at 178. Plaintiffs do not and cannot allege, for example, that any of the LAS sprayheads convey effluent directly into the Conasauga River. Rather, Plaintiffs principally allege an *indirect* connection between the LAS and Conasauga River via groundwater and, to a lesser extent, surface water runoff. *See, e.g.*, FAC ¶¶ 136, 155, 172, 173. Plaintiffs describe the LAS as a large system of 19,000 sprayheads that distribute treated effluent across 9,800 acres of land. *Id.* ¶ 130. These allegations do not describe a point source discharge, but rather a diffuse, widespread, and highly variable (depending on which sprayheads and fields are in use at any given time) dispersal of treated effluent through the LAS as a system, which under the LAS Permit is designed and operated *not* to discharge directly to the surrounding waterbodies. The "diffuse" or "passive[ ]" movement of pollutants through groundwater is "nonpoint source pollution, which is not subject to NPDES permitting." *Pac. Coast Fed'n of Fishermen's Ass'ns v. Conant*, 657 F. Supp. 3d 1341, 1361–62 (E.D. Cal. 2023) (quotation omitted). "[D]iffuse seepage" at the LAS as "a generalized, site-wide condition" does not originate from a discrete point that functions as a conveyance, and "indeterminate and dispersed percolation"

9

is "incompatible with the effluent limitation scheme that lies at the heart of the [CWA]." *Sierra Club v. Va. Elec. & Power Co.*, 903 F.3d 403, 411 (4th Cir. 2018).

Removing any doubt, EPD previously declined to issue an NPDES permit for the LAS on the grounds that the LAS is a nonpoint source regulated under state law. Request for Judicial Notice ("RJN"), Ex. 1 (Ltr. from Carol A. Couch, EPD Director, to Don Cope, Dalton Utilities CEO (May 17, 2002)).[5]  EPD explained that Dalton Utilities' LAS is "designed as a no discharge system" whereas "NPDES permits regulate the discharge of pollutants from a point source to waters of the State." *Id.* at 2.  "An LAS permit is therefore a better tool to use to regulate the Dalton Utilities system.  If EPD were to issue an NPDES permit to Dalton Utilities, it would basically allow for runoff from the facility which is not intended as part of the design." *Id.* Thus, EPD, the state regulator with authority over "groundwater and other nonpoint sources of pollution," *County of Maui*, 590 U.S. at 184, has confirmed that the LAS is a nonpoint source within its regulatory domain, RJN, Ex. 1.

This result is consistent with Georgia law.  Land application systems are nonpoint sources.  *City of Guyton v. Barrow*, 828 S.E.2d 366, 373 (Ga. 2019) ("[T]he Board of Natural Resources has issued permitting regulations governing nonpoint

---

[5] The Court may take judicial notice of the EPD letter as a "reliable official public document[ ]." *RMS Titanic, Inc. v. Zaller*, 978 F. Supp. 2d 1275, 1293 (N.D. Ga. 2013) (citing *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1260 n. 2 (11th Cir. 2006)).

sources, including for LASs."). EPD determines whether a given discharge comes from a nonpoint source (like an LAS) and therefore does not require a NPDES direct discharge permit, or from a point source and therefore requires an NPDES direct discharge permit. *See* O.C.G.A. § 12-5-30(a–b). An LAS cannot be both a nonpoint source and a point source. Ga. Comp. R. & Regs. 391-3-6-.11(3) ("Owners of land disposal or land treatment systems which employ overland flow, subsurface drain fields, or other techniques which result in one or more point discharges into surface waters of the State, must obtain an NPDES permit and will not be issued a land disposal system permit."). Here, EPD issued Dalton Utilities an LAS Permit because it determined that the LAS is a nonpoint source. Therefore, the LAS does not require a NPDES permit, and Count One should be dismissed.

## II.   Plaintiffs Fail to Allege Discharges of Non-Stormwater Containing PFAS in Violation of the CWA (Count Two)

Count Two fails to state a claim because Plaintiffs do not allege any unpermitted discharges of non-stormwater from outfall locations that would violate the NPDES General Stormwater Permit. The NPDES General Stormwater Permit only regulates discharges of pollutants from specific, designated stormwater outfall locations. Ex. B at App'x A. To receive coverage under the NPDES General Stormwater Permit, applicants (including Dalton Utilities) must submit a Notice of Intent designating their site's outfalls and then develop (and obtain EPD's approval of) a stormwater pollution prevention plan to monitor, inspect, and collect samples from

11

all outfalls authorized by the permit. *Id.* §§ 4–6. The NPDES General Stormwater Permit covers these designated outfalls, all of which are located outside the perimeter of the sprayfields and receive only industrial stormwater flows from non-irrigated areas of the larger LAS (e.g., those associated with roadways, material handling areas, and support facilities). The LAS Permit governs the sprayfields. Ex. A at 9-11.

In Count Two, Plaintiffs claim that Dalton Utilities is violating three provisions of its NPDES General Stormwater Permit that prohibit (with some exceptions) the discharge of stormwater mixed with non-stormwater. In support, Plaintiffs point to sampling they conducted in 2021 and 2022 in the Conasauga River and its tributaries and at non-outfall locations in and around the LAS. FAC ¶¶ 154, 156, 157, 186. These allegations fail to state a claim under the Clean Water Act.

*First*, the locations in and around the LAS from which Dalton Utilities allegedly discharged "non-stormwater containing PFAS," *id.* ¶ 186, are not stormwater outfalls but rather small tributary streams within the LAS, and the samples Plaintiffs took are not of stormwater discharges but rather flowing water within the tributaries, *see id.* ¶¶ 154, 156, 157. Plaintiffs' conclusory allegation that Dalton Utilities has violated the CWA "by discharging non-stormwater containing PFAS at the LAS in violation of . . . the NDPES [*sic*] General Stormwater Permit," *id.* ¶ 186, fails because the facts alleged in the FAC do not pertain to discharges from any actual designated stormwater outfalls. *See Glynn Env't Coal.*, 146 F.4th at 1088–89

12

(affirming dismissal where plaintiffs did not "allege sufficient facts" and pleaded only a "conclusory recital of an element of a Clean Water Act violation").

*Second*, Plaintiffs' sampling of water in the Conasauga River and its tributaries does not support their claim that Dalton Utilities has violated its NPDES General Stormwater Permit.  The Supreme Court recently rejected an interpretation of the CWA that would hold a permittee liable "if the quality of the water into which it discharges pollutants fails to meet water quality standards."  *City & Cnty. of San Francisco v. EPA*, 604 U.S. 334, 348 (2025).  The CWA does not impose liability on permittees based on the "end result"—the quality of the water where discharges ultimately end up.  *Id.* at 345–49.  Count Two should be dismissed.

## III.    The LAS Permit and Georgia Water Quality Control Act Are Not Enforceable Through a CWA Citizen Suit (Counts Three and Four)

Plaintiffs next try to shoehorn alleged violations of the LAS Permit (Count Three) and GWQCA (Count Four) into their citizen suit under the CWA.  Both claims are meritless and should be dismissed.[6]

### A.    Plaintiffs Cannot Enforce the LAS Permit Through a CWA Citizen Suit

Count Three asserts that Dalton Utilities' state-issued LAS permit—which

---

[6] To the extent Plaintiffs argue in Count Three that alleged discharges from the LAS are the functional equivalent of direct discharges from a point source and that an NPDES permit is therefore required for all LAS operations, then Count Three collapses into Count One.

13

governs the LAS as a nonpoint-source—is "a substitute for an NPDES Permit" and "should be treated as a state permit issued pursuant to the CWA." FAC ¶ 191. Plaintiffs allege that "violations of the LAS Permit are violations of the CWA and may be enforced in a citizen suit pursuant to Section 505 of the Act, 33 U.S.C. § 1365 as an effluent standard or limitation." *Id.* ¶ 199. These allegations fail as a matter of law and fundamentally misunderstand the nature of the CWA and Georgia state law.

*First*, Plaintiffs' claim that the LAS Permit is a "substitute" for an NPDES permit ignores the structure and purpose of the CWA. *Id.* ¶ 191. "Congress intended to leave substantial responsibility and autonomy to the States" over nonpoint source pollution, and the CWA "preserve[s] state regulation of groundwater and other non-point sources of pollution." *County of Maui*, 590 U.S. at 174, 184; *see also Friends of Everglades v. S. Fla. Water Mgmt. Dist.*, 570 F.3d 1210, 1226–27 (11th Cir. 2009) (explaining the "organizational paradigm" of differential treatment between point source and nonpoint source pollution). Thus, the two paradigms—federal regulation of point source discharges and state regulation of nonpoint source discharges—cannot be simply "substitute[d]" for one another such that the violation of a state law permit necessarily constitutes a violation of federal law. FAC ¶ 191. Plaintiffs' substitution theory would eviscerate the CWA's preservation of state regulation of nonpoint sources of pollution, and federal law would simply displace state law.

*Second*, the CWA itself limits citizen suit enforcement to the provisions of an

14

NPDES permit.  33 U.S.C § 1365(f); *see also Askins v. Ohio Dep't of Agric.*, 809 F.3d 868, 875 (6th Cir. 2016) ("[Courts] must respect the limited nature of citizen suits under the Clean Water Act.  If Congress intended the citizen suit to be all en-compassing, it would have permitted suit for all violations of the Clean Water Act, rather than specifying limited circumstances.").  Private citizens cannot use the CWA to enforce state regulations that are different than those contained in an NPDES permit.  *See Atl. States Legal Found., Inc. v. Eastman Kodak Co.*, 12 F.3d 353, 358–59 (2d Cir. 1993).  The LAS Permit is not an NPDES permit; it is issued under Georgia law.  *See* Ga Comp. R. & Regs. 391-3-6-.19.  And there is no provi-sion in any NPDES permit that adopts or incorporates the LAS Permit.

*Third*, Georgia law does not afford a private plaintiff any right of action to enforce a land application system permit.  The LAS Permit was issued under the GWQCA and provides that the permittee's noncompliance may be a violation of the GWQCA and grounds for an enforcement action, termination of the permit, or denial of a permit renewal application.  Ex. A at 25.  Only EPD has the power to bring an enforcement action, terminate the permit, or take action on a renewal application.  *See id.*; *see also* O.C.G.A. § 12-5-48.  Neither the GWQCA nor the LAS Permit itself provides for any private right of action, and Georgia law does not recognize implied rights of action.  *See Govea v. City of Norcross*, 608 S.E.2d 677, 683 (Ga. Ct. App. 2004); *Best Jewelry Mfg. Co. v. Reed Elsevier Inc.*, 780 S.E.2d 689, 696

15

(Ga. Ct. App. 2015).

That is not to say that Plaintiffs had no recourse as it relates to the LAS Permit. If Plaintiffs believed the LAS Permit was wrongfully issued or should have contained an effluent limitation for PFAS, they could have pursued a claim under the Georgia Administrative Procedures Act in the Georgia Office of State Administrative Hearings. O.C.G.A. § 12-2-2(c)(2)(A). Such a challenge[7] is a private party's recourse against an allegedly unlawful or deficient state permit, not a civil claim in federal court under federal law. *See City of Guyton*, 828 S.E.2d at 367–68.

### B.   The Georgia Water Quality Control Act Similarly Confers No Private Right of Action

Likewise, there is no private cause of action to enforce the GWQCA's provisions or permits issued thereunder, thus independently compelling dismissal of both Counts Three Four. Under the civil liability provision of the GWQCA, those responsible for discharge violations "shall be liable in damages ***to the state and any political subdivision thereof*** . . . ." O.C.G.A. § 12-5-51 (emphasis added). The Act contains no provision for damages—or any other relief—to private plaintiffs. *See Franklin Cnty. v. Fieldale Farms Corp.*, 507 S.E.2d 460, 463 (Ga. 1998) ("The Georgia Water Quality Control Act gives ***state government*** the responsibility for

---

[7] CRBI routinely utilizes these provisions to challenge environmental permits issued under the GWQCA. *See, e.g.*, *Coosa River Basin Initiative v. EPD*, BNR-ES-0713085-57, 2007 Ga. ENV LEXIS 6, \*1 (2007); *Coosa River Basin Initiative v. EPD*, BNR-WQC-1210625-105, 2012 Ga. ENV LEXIS 3, \*1 (2012).

16

establishing and maintaining water quality." (emphasis added)).

Plaintiffs appear to claim, without legal support, that a violation of the GWQCA is also a violation of the CWA. FAC ¶¶ 202–205. But state and federal water pollution laws are fundamentally separate regimes. *See supra* Section III.A. Allowing Plaintiffs to import an alleged GWQCA violation into a CWA citizen suit would collapse state-federal division of authority, ignore state law, and circumvent the CWA's jurisdictional requirements. Counts Three and Four should be dismissed.[8]

## IV. The Court Should Dismiss the Perkins' Negligent Misconduct, Negligence *Per Se,* and Nuisance Claims for Damages Against Dalton Utilities (Counts Six, Eight, and Nine)

The Perkins' claims for negligence misconduct, negligence *per se*, and public and private nuisance (to the extent those claims seek damages) fail for two reasons. *First*, the negligence claims are precluded by Dalton Utilities' municipal immunity. *Second*, the *ante litem* notice is insufficient for any claim for damages.

### A. The Negligence Claims Fail on Municipal Immunity Grounds

The Perkins' negligence claims against Dalton Utilities fail for lack of subject matter jurisdiction. "Under Georgia law, municipal corporations are protected by

---

[8] CRBI fails to make specific allegations establishing that a specific member has suffered or will suffer harm, a necessary element of associational standing. *Georgia Republican Party v. Sec. & Exch. Comm'n*, 888 F.3d 1198, 1203-05 (11th Cir. 2018); *see* FAC ¶ 35.

sovereign immunity pursuant [] to … Article IX, Section II, Paragraph IX, unless that immunity is waived by the General Assembly." *City of Atlanta v. Mitcham*, 769 S.E.2d 320, 322 (Ga. 2015); *see also* O.C.G.A. § 36-33-1; *City of Alpharetta v. Vlass*, 861 S.E.2d 249, 351 (Ga. Ct. App. 2021) ("[M]unicipal immunity is not in the nature of an affirmative defense but rather speaks to the trial court's subject matter jurisdiction.").

Specifically, "municipal corporations," like Dalton Utilities, "are immune from liability for [negligent] acts taken in performance of a governmental function." *Mitcham*, 769 S.E.2d at 323; *Gatto v. City of Statesboro*, 860 S.E.2d 713, 717 (Ga. 2021); *City of Powder Springs v. WMM Props., Inc.*, 325 S.E.2d 155, 158 (Ga. 1985). Under Georgia law, a municipality's collection, treatment and disposal of wastewater is a governmental function. *Ingram v. City of Acworth*, 84 S.E.2d 99, 102 (Ga. Ct. App. 1954); *City of Douglas v. Cartrett*, 137 S.E.2d 358, 360 (Ga. Ct. App. 1964).

Here, Dalton Utilities is immune from claims of negligence in its performance of wastewater treatment services for the public benefit. *See Ingram*, 84 S.E.2d at 102. Because there has been no waiver of Dalton Utilities' municipal immunity, the Perkins are precluded from pursuing negligence claims against Dalton Utilities.

### B. The *Ante Litem* Notice Is Insufficient

The Perkins' negligence and nuisance claims also fail because the *Ante Litem*

Notice is insufficient.  Under O.C.G.A. § 36-33-5(b), a plaintiff seeking money damages from a municipality must provide the municipality notice of the claim in writing, "within six months of the event on which the claim is predicated," stating the time, place, and extent and cause of the injury.  *Wallace v. City of Atlanta*, 889 S.E.2d 438, 441 (Ga. Ct. App. 2023) (citation and punctuation omitted).  Providing an *ante litem* notice as required by law "is a condition precedent" to filing suit.  *City of Atlanta v. MLK Props., LLC*, 904 S.E.2d 79, 83 (Ga. Ct. App. 2024) (citation omitted).

An *ante litem* notice is insufficient if it omits the injury date or involves an event more than six months old.  *See Vaillant v. City of Atlanta*, 599 S.E.2d 261, 264 (Ga. Ct. App. 2004) (finding *ante litem* notice defective where plaintiff gave "no indication as to when her injury occurred"); *Cundy v. City of Smyrna*, 591 S.E.2d 447, 448 (2003) (claims for flooding that occurred more than six months prior to the written *ante litem* notice were barred, "even if the event was part of a continuing pattern of events, such as a continuing trespass or nuisance").  Here, the *Ante Litem* Notice does not provide a date on which the event occurred.  *See generally* Ex. C.  The Notice alleges that "intermittent flooding from the Conasauga River" is the cause of the "contamination of the property's soil and surface waters" with PFAS.  Ex. C at 2; *see also* FAC ¶ 37.  However, no single flooding event, let alone a flooding event in the six months prior to the Notice, is alleged.  *See* Ex. C.  Thus, the

19

Perkins' negligence and nuisance claims (to the extent they seek damages) fail as a matter of law.

V.     **The Court Should Dismiss the Perkins' Abatement of Public and Private Nuisances Claim (Count Twelve)**

    A.     **The Perkins Lack Standing to Pursue Abatement of the LAS, Conasauga River, and its Tributaries**

The Perkins seek relief in the form of an order requiring Defendants to remove *all* PFAS from the *entire* Conasauga River *and* related surface waters in the Upper Coosa River Basin, as well as an order to remediate the LAS—in addition to remediation costs to repair their own property. FAC ¶¶ 273, 286, 288. The Perkins lack Article III standing to seek the significant injunctive relief they demand.

To demonstrate standing to pursue injunctive relief, plaintiffs "must show (i) that [they] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant[s]; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "While Georgia law, through O.C.G.A. § 51-9-1, provides a *cause of action* for interference with one's property rights, a plaintiff must still have Article III standing (and in particular, an injury in fact) to pursue such a cause of action in federal court." *Johnson v. 3M Co.*, 2024 WL 6956476, at *9 (N.D. Ga. Dec. 10, 2024) (Totenberg, J.).

20

The Perkins cannot establish the third prong—redressability. To do so, the Perkins must show "a likelihood that the requested relief will address the alleged injury." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 84 (1998). "That is, the relief must match the legally recognized injury." *Johnson*, 2024 WL 6956476, at *12. The Perkins allege a legally recognized injury, but the sweeping equitable relief they seek—remediating a river, Dalton Utilities' property, and Perkins' property—would not address the alleged injury to the Perkins' property because the LAS is not the only source of PFAS in the Conasauga River and related surface waters in the Upper Coosa River Basin. FAC ¶¶ 53–54. Consequently, while the remediation of the LAS and Conasauga River may reduce the amount of PFAS in the river, it would not completely remove PFAS from the river or address other sources of PFAS in the river. *See Johnson*, 2024 WL 6956476, at *12. [9]

## B.    The Perkins Have an Adequate Remedy at Law

The Perkins' abatement claim also fails because the Perkins have an adequate remedy at law. Under Georgia law, equitable relief is an "extraordinary remedy" that is inappropriate when a plaintiff has a legal remedy. *See* O.C.G.A. § 23-1-4;

---

[9] Additionally, the FAC alleges that Perkins Farms LLC is the owner of the property at issue, not Mr. Perkins. FAC ¶ 36. The Perkins offer no basis to find that an individual has standing to pursue claims based on property owned by an LLC. *Siewe v. Fay Servicing, LLC*, 2021 WL 2651819, at *6 (N.D. Ga. Feb. 18, 2021) ("[F]ederal courts around the country "have routinely found that a member of an LLC does not have [Article III] standing to sue on behalf of the LLC for an injury caused to the LLC") (quotation omitted).

O.C.G.A. § 9-5-1; *Dep't of Transp. v. Mixon*, 864 S.E.2d 67, 79 (Ga. 2021). Courts have consistently denied nuisance abatement claims where the plaintiff's injury can be redressed by money damages. *See, e.g., Cent. of Ga. Ry. Co. v. Americus Const. Co.*, 65 S.E.2d 855, 855 (Ga. 1909); *Neel v. Clark*, 145 S.E.2d 235, 236 (Ga. 1965) (finding plaintiff was not entitled to judgment abating nuisance where he had adequate and complete remedy at law). And regardless of whether the nuisance is permanent or continuing, a property injury is redressable by damages. *City of Warner Robins v. Holt*, 470 S.E.2d 238, 241 (1996) ("If the nuisance is permanent, the measure of damages is the diminution of fair market value of the property. If the nuisance is abatable, the measure of damages is lost rental value for so long as the nuisance is allowed to continue."); *Hodges v. Pine Prod. Co.*, 68 S.E. 1107, 1109 (Ga. 1910) (same); *Price v. Ga. Indus. Realty Co.*, 207 S.E.2d 556, 559 (Ga. Ct. App. 1974) (same). Even "annoyance and discomfort" caused by a nuisance is redressable by damages. *See Hammond v. City of Warner Robins*, 482 S.E.2d 422, 428 (Ga. Ct. App. 1997).

As in *Johnson*, here, the Perkins are not entitled to injunctive relief as a remedy for their alleged injuries related to PFAS contamination because "the injury in fact [] [is] so clearly a monetary harm that [could] be fully addressed through damages." 2024 WL 6956476, at *13. Like the increased water rates that plaintiff paid in *Johnson*, any damage to the Perkins' property is redressable by monetary

22

damages. *Allgood Rd. United Methodist Church, Inc. v. Smith*, 325 S.E.2d 392, 394 (Ga. Ct. App. 1984) ("The general rule for the measure of damages involving real property is the diminution of the fair market value of the property and/or the cost of repair or restoration."). In fact, the Perkins themselves have conceded that their alleged injury *can* be redressed by the cost of remediating their land—which they already calculated. *See* Ex. A at 4 (estimating damages for remediation costs at $50,000,000). Thus, the Perkins' remedy, if any, is at law, not sweeping equitable relief.[10]

### C.    The Overbroad Abatement Relief Is Unsupported by Georgia Law

The abatement claim also fails because it is overbroad. Georgia law has long required that nuisance abatement and injunctive relief claims be strictly tailored to the specific injury alleged. *See Ruff v. Phillips*, 50 Ga. 130, 130 (1873) ("An order abating a nuisance ought not to exceed the necessity of the case, and if it do this it should be set aside."); *Bruce v. Wallis*, 556 S.E.2d 124, 126 (2001) ("An injunction should not impose on defendant any greater restriction (burden) than is necessary to protect plaintiff from the injury of which he complains." (citation omitted)).

Here, substantial redress can be afforded to the Perkins by payment of an

---

[10] While the Perkins have an adequate remedy at law, their claim for money damages fails because the *Ante Litem* Notice is not sufficient. *See supra* Section IV.B; *City of Alpharetta v. Francis*, 883 S.E.2d 400, 403 (Ga. Ct. App. 2023) (reversing denial of motion to dismiss where plaintiffs had a legal remedy but *ante litem* notice was defective).

amount equal to the depreciation in value of their property as a result of the alleged PFAS contamination. *See City of Harrisonville v. W. S. Dickey Clay Mfg. Co.*, 289 U.S. 334, 337–41 (1933) (reversing grant of injunctive relief because plaintiff farm owner could obtain "substantial redress" through a monetary award equal to the depreciation in the farm's value attributable to nuisance, rendering an injunction unnecessary). Their property injury does *not* warrant injunctive relief, let alone abatement in the form of remediation of Dalton Utilities' LAS, the *entire* Conasauga River (and its tributaries), *and* the Perkins' private property. FAC ¶¶ 286, 288. "[F]ederal courts should aim to ensure the framing of relief no broader than required by the precise facts." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 193 (2000) (quotation omitted). The mismatch between the Perkins injury and requested remedy is precisely the kind of overbreadth *Laidlaw* cautions against. Plaintiffs are, once again, "trying to fit a square peg in a round hole—the requested remedy does not fit the injury." *Johnson*, 2024 WL 6956476, at *13. Accordingly, the Court should deny the Perkins' request for sweeping injunctive and abatement relief and, at most, confine any potential remedy to monetary damages tailored to a proven, property-specific loss.

## D.    Dalton Utilities Has Taken Steps to Remediate the LAS

The abatement claim also is duplicative of the relief that Dalton Utilities seeks in *The City of Dalton* and therefore fails as a matter of law. Since 2024, Dalton

24

Utilities became obligated, and has already taken significant steps, to remediate the PFAS contamination at the POTW. *See* FAC ¶ 287. Claims for injunctive relief are moot when they have already been addressed. *See Foster Poultry Farms, Inc. v. Water Works & Sewer Bd. of the City of Demopolis*, 370 F. Supp. 3d 1341, 1356–57 (S.D. Ala. 2019); *see also Bruce*, 556 S.E.2d at 126–27. As this Court noted, Dalton Utilities "has ***already*** been compelled to remediate the LAS." *See* Order [ECF No. 154] at 11 (emphasis in original). In denying Dalton Utilities' motion to stay, the Court considered "Plaintiffs' competing interests in recovering ***damages*** for the harm both they and ***their property*** have suffered, harm which is given no platform in [*The City of Dalton*]." *Id.* at 13 (emphasis added). Thus, if the Perkins are entitled to anything, it is damages for the Perkins property injury, not grossly disproportional injunctive relief affecting an entire river and Dalton Utilities' property. *See Bruce*, 556 S.E.2d at 126–27.

## CONCLUSION

For these reasons, Dalton Utilities respectfully requests that the Court dismiss Plaintiffs' FAC [ECF No. 167] against Dalton Utilities.

Respectfully submitted, this 17th day of June, 2026.

**TROUTMAN PEPPER LOCKE LLP**

/s/ *Lindsey B. Mann*

Lindsey B. Mann
(GA Bar No. 431819)
lindsey.mann@troutman.com
E. Fitzgerald Veira
(GA Bar No. 726726)
fitzgerald.veira@troutman.com
T. Scott Mills
(GA Bar No. 757063)
scott.mills@troutman.com
Anaid Reyes Kipp
(GA Bar No. 703283)
anaid.reyes-kipp@troutman.com
600 Peachtree Street, N.E., Suite 3000
Atlanta, Georgia 30308
404-885-3000

Brooks M. Smith (*pro hac vice*)
brooks.smith@troutman.com
1001 Haxall Point, Suite 1500
Richmond, VA 23219
804-697-1200

*Counsel for Defendant The City of Dalton, Georgia, acting through its Board of Water, Light and Sinking Fund Commissioners, d/b/a Dalton Utilities*

26

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D) of the Local Rules for the United States District Court for the Northern District of Georgia, I hereby certify that the foregoing has been prepared in Times New Roman, 14-point font, as permitted by Local Rule 5.1.

This 17th day of June, 2026.

/s/ Lindsey B. Mann
Lindsey B. Mann
lindsey.mann@troutman.com
Georgia Bar No. 431819

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which automatically serves notification of such filing to all counsel of record.

This 17th day of June, 2026.

/s/ Lindsey B. Mann
Lindsey B. Mann
lindsey.mann@troutman.com
Georgia Bar No. 431819